No. 14,109.

FAIRLAMB *v.* BOWLE, COUNTY TREASURER.
(71 P. [2d] 417)

Decided August 28, 1937.

Messrs. MOYNIHAN—HUGHES, for plaintiff in error.

Messrs. STEWART & BROWN, Mr. HARRY W. GUENO, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A SUIT by a taxpayer to enjoin the treasurer of Delta county from enforcing collection of taxes arising from assessment of real estate. Judgment was adverse to the taxpayer.

It appears that for the years 1931, 1932, 1933, and 1934, the taxpayer timely listed and filed with the county assessor a schedule of his taxable property in Delta county, including the items of real estate here involved; that as to each item of his schedule, real as well as personal, the taxpayer affixed a valuation; that so far as the realty items were concerned the assessor disregarded the taxpayer's valuation, and, without notice, struck his figures and inserted substantially higher ones; that computed at the proper rate on the taxpayer's valuation, he proffered the amount of tax resulting therefrom; that the county treasurer not only declined to accept the sum offered, but threatened to proceed to sell the property involved to realize a sum found by a like computation on the valuation made by the county assessor in the manner indicated.

The problem is comprehended in the questions: Was the taxpayer entitled to notice of the valuation of the county assessor placed on his real property? Failing to receive such notice, may he have injunctive relief? Analysis of our revenue enactments should develop the answers. By section 48, chapter 142 of our Colorado Statutes Annotated (C. L. §7225), every "inhabitant" is required to "make and deliver to the assessor between the first day of April and the twentieth day of May in each year, a full and correct schedule and description upon blanks furnished as aforesaid [by the assessor], of all the personal property of which such person was the owner on the first day of April of the current year. * * * In every such schedule and description the person making the same shall set down the full cash value of each item of the property therein mentioned for the guidance of the assessor. But the assessor shall determine for himself the value of each item after an ex-

amination of ·the schedule." Section 50, chapter 142, Colorado Statutes Annotated (C. L. §7227), provides, that, "Every such inhabitant making any such schedule shall set down therein all real estate situate within the county by him owned or controlled on the first day of April, of the then current year, describing the same by section or part of section, township and range, or where such part of section is not a legal subdivision, by some other description sufficient to identify the same, and his town lots, naming the town or city * * *." Section 114, chapter 142, Colorado Statutes Annotated (C. L. §7291), reads in part: "The assessor shall, prior to the first Tuesday in August of each year, mail to each person, * * *, whose property has been assessed at a valuation other than that given in the schedule filed by such person, * * * a statement of any such change in valuation, and shall give notice, by publication in at least one issue of a paper published in the county seat, that on a day to be therein named he will sit to hear any and all objections to the assessment roll."

In sections 48 and 50 of the statutes, from which we have quoted, the General Assembly has outlined the procedure to be followed in assessing property for taxation purposes. Section 48 details the duty of an inhabitant in relation to listing and valuing his personal property. In the schedule which he is required to file with the county assessor, he must list his personal property and "set down the full cash value of each item" thereof; but the taxpayer's estimate of value is subject to change by the assessor. Section 50, harking back to section 48, provides that in the same schedule where the taxpayer's personal property is listed, he also shall list and adequately describe his real estate in the same county; but there is no requirement that the owner shall set down or otherwise suggest the value of real estate so listed.

The mode of making assessments is a legislative function. *Stanley v. Little Pittsburg Mining Co.*, 6 Colo. 415. It is for the assessor "to make an official estimate

138

of value for the purpose of taxation. * * *· Making out a list of property by the owner, with its estimated value, is not its assessment." *People ex rel. v. County Commissioners,* 27 Colo. 86, 59 Pac. 733. "Every property owner in the state, or person having control of property therein, is required by law, each year, between designated dates, to make, under oath, and deliver to the assessor of the county wherein such property is situate a full and correct schedule and description of all such property, upon blanks furnished by the assessors for that purpose. As to the personal property such owner * * * is required to state the full cash value of all such property for the guidance of the assessor, but the assessor is required to determine for himself the value of each item, after an examination of the schedule, which necessarily includes the real estate, for it is also required to be entered on the schedule; and if not entered or no return is made thereof, it is, nevertheless, the duty of the assessor to place the same upon the assessment rolls." *People ex rel. v. Pitcher,* 61 Colo. 149, 170, 156 Pac. 812.

■ Briefly, the statutes considered, and the genius of our decisions apprehended, we think the taxpayer makes the primary, but not controlling, estimate of value of personal property which he lists for taxation purposes, while as to the real estate listed only the assessor makes such estimate. So premised, section 114, also already quoted, which contemplates notice to the taxpayer when his property has been assessed at a higher valuation than that given by him in his schedule, is without application. The attempt here of the taxpayer to supply an estimate of the value of his real estate was gratuitous and without legal significance. Disregard thereof by the assessor, therefore, did not amount to a change in valuation, for until made by the assessor no valuation in contemplation of law had attached; ergo, formal notice to the taxpayer of the assessor's valuation of his real estate was not required. We do not regard *Gale v. Statler,* 47 Colo. 72, 105 Pac. 858, and *Goldsmith*

*v. Standard Chemical Co.*, 77 Colo. 1, 233 Pac. 1110, as in point. In the Gale case the assessor did not change the valuation of any item real or personal, submitted by the taxpayer in his schedule. What he did was to make an additional assessment of $8,500 under the heading "Money and Credits," where the taxpayer had listed nothing; and of this material addition the assessor did not give notice. In the Goldsmith case, the increases were of the value of machinery used in the operation of a mine and of the output therefrom, and there, as in the Gale case, the assessor did not give notice of the changes indicated. The assessment of real estate was not in question in either case.

In any event, as we are persuaded, the taxpayer had an adequate remedy at law. He had but to pay "the whole of the tax assessed, and to have proceeded under authority of sec. 5750 Rev. Stat. 1908 ['35 C. S. A., c. 142, §281, C. L. §7447]." *Kendrick v. A. Y. & M. M. & M. Co.*, 63 Colo. 214, 164 Pac. 1161. See *First Nat. Bank v. Patterson*, 65 Colo. 166, 174, 176 Pac. 498; *Union Pacific R. Co. v. Weld County*, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110; *Singer Sewing Machine Co. v. Benedict, Treasurer*, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288.

We think the trial court rightly resolved. Let the judgment be affirmed.

MR. JUSTICE KNOUS not participating.