## No. 17,009.

NORTHCUTT ET AL. *v.* BURTON, COUNTY ASSESSOR ET AL.

(254 P. [2d] 1013)

Decided February 27, 1953.

146

Mr. HOWARD M. SCHMIDT, Mr. WARREN E. SCHMIDT, Mr. BERNARD E. ENGLER, for complainants.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, Mr. C. M. SOLLER, Assistant, for Colorado Tax Commission and State Board of Equalization.

Mr. RAY PERKINS, JR., for Officers of Baca County.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

THIS is an original proceeding, filed pursuant to Rule 116, R.C.P. Colo., leave of the court being first had and obtained. Complainants, asserting that they are property owners and taxpayers of Baca county, bring this action on behalf of themselves and others similarly situated, that they may procure "the judgment of this court declaring said 1952 *reappraisal* of Baca County property illegal and void and of no force or effect whatsoever; that said *reappraisal* shall be set aside and held for nought and that no taxes founded or predicated upon same shall be collected; and that another 1952 *appraisal* be effected and consummated according to law for the collection of taxes in 1953." (Emphasis supplied.)

Complainants, in their complaint then proceed to detail certain defects and irregularities in the procedure with reference to the 1952 tax assessment in Baca county, the burden of which is that, because of the failure of completion of the reappraisal of property subject to the ad valorem tax, as ordered by the Colorado Tax Commission: (1) No tax roll was available in said county by July 1, 1952, or since; (2) on account thereof all proceedings thereafter had by both county and state tax officials are without legal effect and are void. They charge also that the county assessor failed to publish

notice of the time and place when he would sit and hear complaints; that the county clerk published an incorrect notice of the meetings of the county board of equalization; and that said meetings were not held upon the dates as directed by statute, thus rendering the 1952 tax levy void. They contend that under the reappraisal their properties have been valued so high as to be out of proportion and not uniform with the resultant valuations of properties comprising other classifications, and for that reason, causing the tax levies upon the properties of complainants, and others similary situated, to be excessive. Following the allegations above mentioned, complainants further allege that "through the failure to complete the assessment roll for Baca County within the time prescribed by law and within the time prescribed for the hearings of objections by affected property owners," complainants' rights to examine and object to their property valuations, and to prosecute their objections and protests to this end to the county board of equalization, have been "arbitrarily and illegally" taken from them, and the exercise thereof, "prevented by the unlawful acts of" the tax authorities. The complaint ends with the prayer that the "reappraisal" be declared void and that this court restrain the assessor from delivering to the treasurer the 1952 tax list and warrant "based upon said illegal 1952 reappraisal;" restrain the treasurer "from collecting any taxes based upon said illegal 1952 reappraisal," and to set aside all acts of all respondents had in connection therewith.

In response to our rule to show cause, respondents, who are county officials, answered, and those who are state officials filed motion to quash our rule and dismiss the action.

Counsel for complainants in their motion for leave to file the complaint and again in their brief, commendably state that the facts of this case, for all purposes presently relevant and material, are practically identical with the situation presented in case No. 17004, entitled

*Citizens' Committee for Fair Property Taxation, a non-profit Colorado Corporation, etc., et al. v. William L. Warner as County Assessor of Pueblo County, etc. et al.,* 127 Colo. 121, 254 P. (2d) 1005. A study in comparison of the two cases demonstrates the accuracy of this statement, and the temptation is strong here to say no more than that the decision in that case, announced by us on the 18th day of February, 1953, settles all matters involved in the instant proceedings, and to adopt by reference the decision in No. 17004 as the opinion here. While adoption by reference to the decision in that case would be a fair disposition of this matter, nevertheless we indulge the liberty of adding slightly to what we therein said, because of the gravity of these cases and the considered importance of them by persons directly interested therein; and, also, on account of a slightly different situation concerning notice in this case than that with which we were dealing in the Pueblo county case.

██ ██ Counsel for complainants insistently contend that the provisions of section 114 (as amended by section 14, chapter 158, S. L. '43, p. 498), section 293 and section 292 (as amended by section 19, chapter 158, S. L. '43, p. 502) of chapter 142, '35 C.S.A., relating to time of hearing of complaints by the assessor, county board of equalization, and the giving of notice thereof, are mandatory, and that strict compliance therewith is requisite to a legal and valid assessment. This is tantamount to saying that if, for any reason, the county officials charged with duty by any of said statutes, failed in full and exact compliance therewith in every respect and in full measure, the entire tax assessment for that year, in any particular county, is ipso facto void. So to hold would be to place an entirely too strict a construction upon the statutes involved. These statutory requirements are to be construed as mandatory only in specific instances where, upon clear showing on behalf of an aggrieved taxpayer, that, on account of noncompliance

150

with these statutory requirements by the county officials charged therewith, he has been deprived of an "opportunity for a hearing, or for any other purpose important to him." *Tallon, Treasurer v. Vindicator Consolidated Gold Mining Co.*, 59 Colo. 316, 328, 149 Pac. 108. Where, as here, failure to appear and protest is admittedly due to the assumption and belief that the tax valuations were unavailable because of the incomplete status of the tax roll, as a consequence of which no protest was made, the issue of lack of notice and other irregularities in the proceedings become irrelevant and immaterial. It immediately is apparent that under such circumstances full statutory compliance and regularity in every respect on behalf of the officials would have made no difference to the complainants, because they did not intend to appear anyway. No prejudice to their position could have resulted in such instance, and the burden of showing injury is upon them. Instead of such a claim, accompanied by an adequate showing to substantiate it, they attempt to excuse themselves by asserting that it would have been useless to appear, because the tax roll was not complete. Furthermore, in so far as the question of notice is concerned, the statutes within themselves constitute notice, and it is presumed that the owners of assessed property, if aggrieved, will avail themselves of the remedy provided thereby, unless prevented from so doing by some act of the officials. They may not put upon the public officials the burden which rests upon their own shoulders; nor, by blaming the officials, excuse their own neglect in failing to pursue the remedy provided by statute as an avenue for relief from their alleged distress. *First National Bank of Greeley v. Board of County Commissioners*, 264 U. S. 450, 44 Sup. Ct. 385, 68 L. Ed. 784.

So much for "notice"; now, how about the assessment roll? Complainants insist that had they gone to the assessor's office in July, 1952, they could not have ascertained their tax valuations because the assessment

roll was incomplete. The assessor says that he was available at his office on all dates from July 1, 1952, on, and that no complainant appeared either to seek information or to enter protest or objection. Further, while the books were not finished, the assessor says he had "appraisal cards," schedules and other documents from which anyone in his office could have given any inquirer the valuation at which his property had been assessed. In the absence of a clear showing to the contrary, the statement of the assessor must be accepted as true, the presumption being in his favor (*Citizens' Committee v. Warren, supra*); nor is it essential, for the purposes embraced in this statute, that the book in the assessor's office, entitled "Tax Roll," be fully compiled in order to have the tax roll completed. The prime objective of one seeking to inquire, is to ascertain the assessed valuation of his property in order to determine whether he should present a protest. The "book," complete or not, makes no difference to him if he can ascertain his valuation. The term "assessment roll" has not the distinction of legal definition. *Miller v. Board of County Commissioners*, 92 Colo. 425, 431, 21 P. (2d) 714.

██ ██ No procedural principle is more certain than is that declaring that in the determination of matters of this kind equity may not be called upon except in the absence of a full, complete and adequate remedy at law. *Fairlamb v. Bowle, County Treasurer,* 101 Colo. 135, 71 P. (2d) 417. Other citations might be added. Also, another rule of procedure is that, where the statutes prescribe a method for relief, resort may not be had to extraordinary proceedings in the nature of the present one, on the theory that such constitutes a matter of great public importance. Situations entitled to be classified as of great public importance may not be created through failure to follow a prescribed legal remedy. Neither here, nor in the Pueblo county case, have we dicussed all of the remedial statutes applicable, and we

do not now intend to discuss them at length, but a comment or two in that respect may be helpful.

All section numbers here given refer to chapter 142, '35 C.S.A., and, where amended, to said amended sections. Section 114 (amended, S. L. '43, p. 498) fixes the time when the assessor sits to hear complaints, and section 292 (amended, S. L. '43, p. 502) that of the meetings of the county board of equalization. Section 116 (amended, S. L. '43, p. 499 and S. L. '45, p. 549) provides for appeal to the county board of equalization in event the assessor denies relief, and also, in event the board of equalization also denies the taxpayer's petition, for appeal to the district court; if filed therein not later than the first Monday in the following January. This remedy is, as the statute reads, by appeal, the procedural steps of which must be carefully followed. They apply where property has been: (1) Twice assessed; (2) is exempt; (3) assessed when not possessed; (4) assessed too high; or (5) otherwise illegally assessed because of error capable of adjustment. These sections are sometimes mentioned as remedial statutes.

There is another provision similar in purpose, section 294. Under the provisions of this section, the county commissioners, after notice to the assessor and upon hearing, are authorized to abate, refund or rebate any tax found to have been erroneously or wrongfully levied; subject, however, to the approval of the Colorado Tax Commission.

Where, however, the tax is illegally laid or, because of some unlawful act of the authorities is erroneous in its entirety, requiring not adjustment but refund, a demand for which is denied, pursuant to section 281 suit may be brought to compel proper reimbursement. The term "erroneous assessment" as used in this section, implies more than mere over-assessment and refers to a tax levy that for any reason is wholly illegal or invalid. *First National Bank of Greeley v. Patterson,*

65 Colo. 166, 174, 176 Pac. 498, 501; *South Broadway National Bank v. Denver*, 51 F. (2d) 703, 705.

Lastly, we refer briefly to the powers and authority of the Colorado Tax Commission with specific reference to sections 157, 158 and 159, chapter 142, '35 C.S.A. By section 157 the Colorado Tax Commission is given general supervision over the administration and enforcement of all laws pertaining to assessment, levying and collection of taxes; is authorized to have supervision over the assessors, county commissioners, county boards of equalization and all other officers and boards of assessment, levy and collection, to the end that all assessment of property shall "be made relatively just and uniform and at its true and full cash value;" its authority over the aforesaid officers going to the extent that, should said officers fail or refuse to perform their duties, they may be removed from office. That all property within the state may be assessed uniformly and at full cash value, the commission may cause to be made special appraisals or reappraisals of any or all of the taxable property within the state or in any part of the state. From this it is apparent that the assessor and county board of equalization are not wholly free agencies in the fixing of valuations for the levy of ad valorem taxes.

Under section 158 the commission is authorized to direct the county commissioners to remit taxes and penalties "found by it to be illegally assessed," and may correct errors appearing in the tax rolls of any county. By section 159, the commission is authorized to receive complaints and carefully examine into all cases where it is alleged that property subject to taxation has for any reason been improperly or unfairly assessed.

These are sweeping and broad powers, and the authority of the commission to make all proper adjustments for the equalization of valuations in the interest of uniformity of taxation far exceeds that of any other civil or administrative agency. The statute provides notice of the functions of the Colorado Tax Commission,

and where a broad reappraisal program is put into effect under its supervision, no special notice of any kind need be given any particular individual, whether his tax be increased or lowered. *People ex. rel. Colorado Tax Commission v. Pitcher,* 56 Colo. 343, 373, 138 Pac. 509.

For obvious reasons this opinion is not designed to be exhaustive of the subject involved. Our purpose only is to illustrate that there are no facts or circumstances presented in the instant case which justify appeal to the original jurisdiction of this court.

For the reasons stated, the writ is denied and our rule to show cause discharged.