## No. 17,399.

### RAY W. WEIDENHAFT, ET AL. *v.* BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY, ET AL.
(283 P. [2d] 164)

Decided May 2, 1955.   Rehearing denied May 23, 1955.

Mr. GEORGE M. GIBSON, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy Attorney General, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

PLAINTIFFS in error commenced action against the Board of County Commissioners of El Paso county to recover the entire amount of 1952 taxes levied on two separate parcels of their real estate situated in Colorado Springs, and paid by them under protest.

By their complaint plaintiffs allege that the tax assessment for the year 1952, while purporting to be that of the county assessor, actually was made by the Colorado Tax Commission (hereinafter referred to as Tax Commission, or Commission) pursuant to its state-wide

reappraisal program, and that said assessment was imposed upon said assessor by the Commission by forcing that official to prepare an inventory of all buildings and property within his county, upon forms provided by the Commission, the valuations of said improvements to be fixed in accordance with a "Tax Manual," or pricing manual, likewise furnished by the Commission, said completed inventory, with the values determined as stated, being referred to as "Building Description and Value Calculation" to be thereafter used as the basis for assessment as to all said properties. It further is alleged that all such valuations determined in accordance with said manual were based upon 1941 cost of reproduction; instead of present market value. Finally it is alleged that the assessment for 1952, made as outlined in plaintiffs' complaint, is violative of section 8 of Article XIV of the Constitution of Colorado, and, therefore, is illegal and void, and that the acts of the Commission of which complaint is made, are without and beyond its authority and are contrary to law and of no legal effect.

The Tax Commission, appearing by the Attorney General, and the Attorney General, pro se, were granted leave to intervene, and joined the Board of Commissioners in answer to plaintiffs' complaint. By the answer it is admitted that the 1952 assessment was made pursuant to the general reappraisal program directed by the Tax Commission; that the documents referred to in the plaintiffs' complaint as having been transmitted to the assessor by the Tax Commission were so furnished and supplied; that said assessor was directed to make use of the same in determining the valuation of taxable property within his county, but it is denied that the acts of said Tax Commission in connection with said reappraisal, or the valuation of property thereunder, were, or that the assessment is, illegal in any respect; denied that the assessment was made by the Tax Commission; and affirmatively it is alleged that the same was made by the duly elected, qualified and acting assessor of said

El Paso county; that all of the acts done by said assessor were required of him by law and were performed by him in pursuance of his duty as such officer. Following the specific admissions, denials and affirmative allegations by way of denial, is a general denial of "each and every allegation of the complaint not * * * specifically admitted or denied." Then follows a second separate defense attacking the sufficiency of the complaint, and third and fourth separate defenses pleading failure on the part of plaintiffs to avail themselves of various administrative remedies, thus barring them from recovery.

The evidence consists only of the documents furnished the assessor by the Tax Commission; the orders, minutes and resolutions of the Commission; plaintiffs' tax schedule; abstract of assessment, to which is appended the affidavit of the assessor verifying the assessment roll; and receipts for the payment of the tax under protest, all of which exhibits were admitted in evidence without objection, save as to their materiality. Only one witness was orally examined, and her testimony goes exclusively to an explanation of the manner in which the valuation index was compiled by use of the tax manual.

The trial court entered findings in effect that plaintiffs were the owners of the properties; that their 1951 valuation was $14,400, on which they paid a tax of $943.78; that the 1952 valuation was $34,930, on which they paid, under protest, a tax of $1,545.65; that the assessor of El Paso county, in fixing the valuation for 1952, caused a field inspection and appraisal of said premises to be made and "fixed the valuation thereon by applying to said field appraisal, the formulae set forth in the pricing manual and chart card furnished to the Assessor by the Colorado Tax Commission in pursuance of the state's reappraisal program"; that said assessor used the same method for determining valuations of all property in said county and did not discriminate against plaintiffs or their property; that said assessor made use of said formulae and pricing manuals "of his

own volition and without coercion or usurpation by the" Tax Commission; that proper notices of time and place for correction of errors by the assessor and by the Board of Equalization were given; but that plaintiffs failed to appear; nor did they make complaint to the Tax Commission nor to the State Board of Equalization; nor avail themselves of any administrative remedy whatsoever. The trial court specifically found, "that the said reappraisal program of the State of Colorado and the statutes authorizing the same, do not violate, or offend, the Constitution of the State of Colorado and particularly section 8 of Article XIV thereof." Pursuant to the foregoing findings the court determined that the complaint failed to state a claim upon which relief could be granted and entered judgment against the plaintiffs.

At the outset, counsel for plaintiffs, emphasizing the fact that it is not the intention to claim a refund of any part of the tax paid, but insistence on the part of plaintiffs that the entire tax is illegal and void, voluntarily removes them from any relief that might have been afforded under the administrative procedures provided by statute. They insist that if their action is maintainable at all, it is pursuant to the provisions of C.R.S. '53, 137-1-22. Other points alleged by plaintiffs to be erroneous in the findings and conclusions of the trial court are:

(1) That the finding of the court that the assessor made use of the formulae and pricing manuals provided by the Commission as of his own volition, without coercion by the Commission, is unwarranted.

(2) That the trial court erred in finding that the reappraisal program, and the statutes authorizing the same, do not violate the Constitution of the State of Colorado and particularly section 8 of Article XIV thereof.

(3) That the Tax Commission violated section 8 of Article XIV of the Colorado Constitution by substituting its assessment for that which should have been made by the county assessor; and

(4) That said assessment is based upon reproduction value rather than market value and therefor is contrary to law.

At the outset counsel for plaintiffs was confronted with a dilemma in determining the form of his attack. His difficulty in this respect was first presented when he drew his pleadings; again when the case was heard by the trial court; and it pursues him likewise upon this review. If he admits the constitutionality of the statute and asserts that injury resulted to his client only by reason of the improper application and administration of valid law, then his complaint falls into that class of proceeding where the tax may be said to be irregular, improper or erroneous, making recourse to the courts conditional upon his first having exhausted the usual administrative remedies. In such case the tax could not be said to have been illegally laid but erroneously computed, thus bringing the issues squarely within the rule announced in *Bordner v. Board of County Commissioners,* 92 Colo. 81, 18 P. (2d) 323; *Miller v. Board of County Commissioners,* 92 Colo. 425, 21 P. (2d) 714, and other decisions of this Court cited in *Citizens' Committee v. Warner,* 127 Colo. 121, 136, 254 P. (2d) 1005, wherein the Miller and Bordner cases were given approval.

Plaintiffs' approach would seem to be somewhat double-barrelled in that it is contended that if the statute is not unconstitutional and invalid, the proceedings conducted pursuant thereto were irregular and illegal. This lends merit to the separate defenses interposed on behalf of defendants to take advantage of the fact that the administrative remedies provided by various statutes had not been pursued; and, in the light of such defenses, also warrants the special findings of the trial court that plaintiffs had failed to pursue said administrative remedies, to which findings plaintiffs now object on the ground that they are immaterial and irrelevant to any issue in the case. It could well be that the case might be disposed of upon this issue alone, but we hesi-

tate to pursue that theory to its extremity in view of the insistence of plaintiffs' counsel that his entire case is based upon the invalidity of the law and his admission that, unless he has an action maintainable under C.R.S. '53, 137-1-22, the proceeding must fail in its entirety.

■ In passing, attention should be called to the well-established rule that where one attempts to maintain a proceeding for a tax refund pursuant to the statute above cited, he has the burden of showing that the tax was illegally laid, is erroneous in its entirety, and incapable of adjustment. If the property be assessed too high, or illegally assessed because of error capable of adjustment, then the administrative remedies must be pursued. *Northcutt v. Burton, Assessor,* 127 Colo. 145, 152, 254 P. (2d) 1013.

■ It also is important to bear in mind the general rule that "every statute, duly passed, must be declared constitutional unless the contrary appear beyond a reasonable doubt." *Watrous, State Highway Engineer v. Golden Chamber of Commerce,* 121 Colo. 521, 547, 218 P. (2d) 498.

The acts of the Tax Commission of which complaint is made, and its authority therefor, are to be measured by the provisions of C.R.S. '53, 137-6-12, which grants to said Commission authority over the general administration and enforcement of all laws pertaining to the assessment and levy of taxes, directing that, it "shall exercise supervision over the county assessors, boards of county commissioners, county board of equalization, and all other officers and boards of assessment and levy, to the end that all assessment of property, real, personal, and mixed, be made relatively just and uniform and at its true and full cash value; to require all county assessors * * * to assess all property of every kind or character at its actual and full cash value." The Commission also is authorized to prepare and transmit to the assessors, "such instructions as it deems conducive to the best interests of the state upon any subject affecting

taxation, * * *. It shall see that all laws concerning the valuation and assessment of all classes of property are faithfully obeyed. It shall issue such orders and instructions to the different taxing officers as will carry into effect the provisions of law relating to taxation and shall enforce the same agreeably to the provisions of this chapter." The various officers are required to forward to the Commission such records and information "as are deemed necessary by the Commission to properly and effectually carry into operation the provisions of this chapter." The Commission also is directed to investigate the works and methods of the county assessors and other officers in order to bring about the equalization of taxes on all kinds of property. The foregoing would seem to cover the general duties and obligations of the Tax Commission.

That said general objective may be accomplished, specific authorization is granted the Commission, by subdivision (6) of said section, to make reappraisement, the portion thereof pertinent to this case reading as follows:

"Whenever in the judgment of the tax commission property in any county or municipal subdivision thereof has not been assessed at its true and full cash value the Commission may make a reappraisement of the property therein, to the end that all classes of property in such taxing district shall be assessed in compliance with the law. When a reappraisement is ordered in any taxing district the commission shall appoint an appraiser, and assistant appraisers if necessary, who shall forthwith proceed to appraise such property in such taxing district, and who shall have all the powers, shall perform all the duties pertaining to the appraisement of property and shall receive the same compensation from the same sources as provided by law for assessors of real or personal property, as the case may be. * * * "

Here again plaintiffs fire with both barrels. They contend: (1) That the statute itself is unconstitutional

because it permits an intrusion upon the duties of the county assessor as a constitutional officer; and (2) that if said statute be cleared of such charge, then the actions of the Commission in attempted pursuance thereof are violative of the Constitution.

With respect to the first contention counsel's argument closely parallels that of the plaintiff in error in *Ames, County Assessor v. People, ex rel.*, 26 Colo. 83, 92, 56 Pac. 656, wherein was involved an attack upon a statute authorizing the then State Board of Equalization to determine the assessment of railroads for taxation purposes. The objection there, as in the instant case, was that the statute conflicted with section 8 of article XIV of the Constitution of the State of Colorado. Said section, with reference to the assessor, simply provides that "There shall be elected in each county * * * ; one county assessor;" who shall be paid as may be provided by law. His duties are not prescribed, and, as in the Ames case, it is contended that it is to be conclusively presumed that the duties of the assessor are such as ordinarily are attached to that office at common law. Because thereof, it further is contended, as likewise in the Ames case, supra, that the legislature is forbidden to authorize any other officer, or board, to assess any class of property and that the only officer of the state qualified under the law to make any assessment is the county assessor.

The decision in the Ames case, supra, bars the door against any such narrow construction as that contended for by counsel in the instant case. In that case this Court specifically held that, while the office of assessor is stipulated by the Constitution, the legislature is not inhibited from passing a law placing the fixing of valuation for assessment of certain properties under another authority, and generally, that control of matters of taxation is plenary to the legislative branch of the government, unless restricted by some constitutional provision. The section of the Constitution under discussion

is not such a limitation, and the assessor is not thereby clothed with the sole authority of assessing property.

The rule in the Ames case was approved, broadened, and as so extended, applied in the case of *People, ex rel. Colorado Tax Commission v. Pitcher,* 56 Colo. 343, 138 Pac. 509, wherein the court had under consideration the original legislation constituting the Tax Commission and granting said Commission jurisdiction over, and power and authority to supervise and direct, the actions of assessors and the assessment of all taxable property in the State of Colorado for ad valorem levy. The Act has since been amended and is hereinabove cited as C.R.S. '53, 137-6-12, but no amendment thereto since the decision in the Pitcher case, supra, has changed the fundamental principles therein considered. In that case the constitutionality of the Act now under discussion was firmly established, and it was made definitely certain that, "The legislature may adopt a plan whereby the work of assessors may be corrected, supplemented, added to or changed." It was specifically declared that:

"So here, we decline to hold how far the general assembly may go in that respect. Nevertheless, in view of the constitutional provisions hereinbefore mentioned and to which reference will again be made, we are certain the legislature may adopt a plan whereby the work of assessors may be corrected, supplemented, added to or changed. Thereby that which the assessors were previously authorized to do by law need not be taken away, but those agencies may still be left free to perform those functions."

We adhered to this principle in *People ex rel. v. Pitcher,* 61 Colo. 149, 167, 156 Pac. 812, wherein it was specifically stated that, "The office of County Assessor in each county was created by the Constitution, but the duties thereof were prescribed by legislative acts." It also was held that the Tax Commission has authority to make original assessment of certain classes of property

and can require the proper officials to make like assessments of all other property.

It, therefore, is clear that the constitutionality of the statutes pursuant to which the tax commission functions have been established not only with respect to section 8 of article XIV, but likewise as to various other constitutional objections raised in the cases cited, supra. With respect to the statute itself there can be no present question as to its constitutionality. However, counsel for plaintiffs contends that even if the statute be declared constitutional, the acts of the Commission pursuant thereto were exercised in an unconstitutional manner, in that the statute does not authorize the Commission to establish standards by which the assessor is required to determine valuations of taxable property. It is insisted that the authority of the Commission is limited only to a change in property valuations first made by the assessor. This position is unrealistic and is entirely too narrow in scope, as we shall undertake to demonstrate.

Fundamentally, in the necessity of obtaining public funds through taxation for the purpose of operating the government, valuations fixed on taxable property are within themselves, of no particular moment. The basic principle of taxation is not valuation, but equalization. From the very beginning of state government, stress has been placed upon equalization in the contribution of taxes levied for governmental use. The whole of Article X of the Colorado Constitution relates to revenue and taxation. Section 3 thereof provides that:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; * * *."

Numerous statutes have been passed at various times directing that all property shall be assessed at its full

cash value. These words are emphasized by repetition in C.R.S. '53, 137-6-12.

No doubt attainment of one hundred per cent equalization in the burden of taxation is beyond hope of full realization because of the necessity of dependence upon human agencies. In attempts to solve the problem, or at best to attain a higher degree of perfection, numerous efforts have been made to implement the procedures of taxation. The most effective approach yet developed has been to grant to the Tax Commission general supervisory authority over all of the officers and boards having to do with the assessment of property for taxation, including the specific authority to make reappraisement of all property within any one or more of the counties or subdivisions of the state wherein property has not been assessed at its true and full cash value. By the statute, such appraisers are given equal authority with county assessors.

It is self-evident that in order to determine whether every subdivision of the state has assessed all property therein at its full and true cash value, the Tax Commission must of necessity fix and establish certain standards by which these various assessments and valuations are to be judged. No objection is made to the fixing of standards for that purpose. Why, then, should objection be raised to the establishment of standards so as to procure and bring about reasonably equal and equitable assessment in the first instance? If standards are necessary and advisable in determination of equality that the Commission may order correction, there is no logical reason why they should be considered as less beneficial, in the interest of good government, when applied as guides to procure more equitable original assessments. Adoption of the negative view would be to apply precaution at the wrong end of the transaction; to do so would condemn the locking of the door before the horse is stolen while commending similar precaution afterwards. In our view, the statute is sufficiently broad

to fully justify the Commission in the adoption and application of reasonable standards essential to bring about a more accurate, equitable and equal original assessment.

Counsel further objects, however, to the methods of the Commission by insisting that its direction to the county assessor in El Paso county was a usurpation of his authority and the dictation of its judgment of property values rather than leaving such to the assessor. The record in this case does not bear out such contention. It is true that the Commission issued a pricing manual and various other data and forms which the assessor was directed to use, but these were designed only for the aid and assistance of the assessor and as standards by which he could more accurately appraise the property under his jurisdiction. In effect these directives simply gave the technical steps necessary to make an accurate valuation appraisal. They contain every possible situation that one can think of that could confront an assessor or appraiser in determining a fair valuation, including not only types of buildings, but also depreciation, obsolescence, locality, proximity to lower-class construction, and all manner of things which should enable a competent appraiser to determine a real and fair evaluation rather than a mere estimate or guess. The assessors were directed to make assessment at full cash value. The materials furnished them, according to the order of the Commission, were "to implement assessment procedures by prescribing standards of assessment and methods and forms." This was the extent of the dictation. The assessment actually was made by the assessor and the officers under his supervision and direction, by and with the assistance of representatives from the Tax Commission's office. The abstract was certified by the assessor himself. The trial court found that the assessor made the assessment and his findings are fully supported by the evidence.

By answer, and during the course of trial, defendants admitted that the Tax Commission furnished the assessor with the pricing manual, forms for the inventory

of property, and for determination of reproduction cost at a certain period, and that said Commission likewise sent its representatives to assist the assessor in the completion of said inventory and to check his work with respect thereto. It is contended on behalf of plaintiffs that defendants likewise admitted that, by insisting upon the assessor complying with the directives of the Commission, said Commission usurped the authority of the assessor, coerced him into certifying an assessment not made by him, and that the resulting assessment actually was dictated and made by the Commision itself. In this latter contention the plaintiffs are clearly in error as a study of the pleadings, rather fully outlined at the beginning of this opinion, makes it very clear that the defendants definitely deny all acts of coercion and insist that the assessment actually was made by the assessor pursuant to the formulae and suggestions of the Commission. It also is insisted that the Commission had the right to demand these things. This phase of the issue already has been discussed and determined adversely to plaintiffs.

Lastly, it is urged that the assessment was required by the Commission to be made upon reproduction cost rather than market value. Here again plaintiffs are in error for the reason that the documents offered as exhibits, and relied upon in support of this contention, demonstrate that the Commission desired to make use of the selected reproduction cost only as a basis, guide, or standard for the determination of full cash value. Also, that its communication of this desire to the assessors was not in the nature of an order but as a suggestion. Exhibit L is entitled, "Suggestions to Assessors for Establishing 'Full Cash Value' on Real Estate." The first paragraph reads: "A roll back of present day values to those in effect in the year 1941 will, in our opinion, comply with the laws requiring full cash value."

Exhibit C, the appraisal manual, is not claimed by the Commission to be complete and it invites suggestions

from the assessors by way of improvement. Exhibit D, the pricing manual, is a compilation of scientific cost statistics. Exhibit B contains instructions on the procedure of pricing and determining values. It sets forth various forms and procedures for the appraisal of property and then in section F treats the important phase of reproduction cost appraisal as an element in determination of uniform property classification. Therein the Commission calls to attention that "In order to arrive at a relatively correct final appraised value, it may be necessary to consult the cost of production of properties, market or sales values, income, rentals, and related information. In the majority of cases reproduction cost alone may be sufficient indication of relative value among properties, and is the first approach to the determination of final value for assessment appraisal." It then directs that from this figure so determined, there shall be deducted allowance for loss of value by reason of age, depreciation, and obsolescence, including in the latter, "losses in value may be by reason of mis-placement of improvements in certain locations; * * * changes in the character of certain neighborhoods due to changes in population, land use, occupancy or shifts in business, lessened demands for certain groups or types of commercial buildings, resulting in the failure of specific buildings or groups of buildings to earn a fair minimum return on their investment; and changes in building design." Then follows the admonition that "final procedure in the handling of the calculations is the checking process, which should be assigned by the assessor to himself or to a trusted deputy." A number of items then are set forth which the assessor should be careful to check.

It is manifest that the sole purpose on the part of the Commission was to furnish standards by which the assessor might be guided, to aid and assist him in arriving at a complete equalization of all the property within his county for taxation purposes, and also to

procure an equalized value of similar properties located within the several counties of the state, that taxation throughout the state might be on a uniform basis as the law requires.

The finding by the trial court that the assessment was made by the assessor of El Paso county is fully supported by the record, and observing no error in the proceedings of the trial court, its judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

Mr. Justice Holland dissenting.

I believe the following should be the opinion of the Court:

Plaintiffs, now plaintiffs in error, are the owners of real property situated in the county of El Paso on which is located a dwelling house and an apartment house. In the year 1951 the property was assessed by the county assessor for a total valuation of $14,400.00 on which a tax of $943.78 was levied.

For the year 1952 the assessed value of the property was $34,930.00, and the tax lexied thereon was $1,545.65, on a 44.25 mill levy. The 1952 assessment was made by the county assessor upon the direction of the Colorado Tax Commission and according to the standards and formula set up by the commission. Insisting that the tax was illegal, plaintiffs, on March 12, 1953, paid the tax levied under protest, and the tax receipt is so marked.

March 16 following, plaintiffs brought suit in the district court of El Paso county against the Board of County Commissioners of said county under section 281, chapter 142, '35 C.S.A., by which they attacked the legality of the assessment made against their property and asked for a judgment for the amount of the tax paid under protest, or such part thereof as the court might determine to be illegal. In substance, the grounds for the relief sought are that the Colorado Tax Commission, in carrying out

the so-called "Colorado Re-appraisal Program," usurped the functions of the county assessor, particularly through its orders and resolutions and its pricing manuals and the standards for assessment set up by the commission and it is alleged that in fact the assessment of the property for the year 1952 actually was made by the tax commission and not by the county assessor and was in violation of section 8, Article XIV of the Colorado Constitution.

Because of the challenge laid against the tax commission and the constitutionality of the state statute creating same, the Attorney General moved to intervene and, after hearing, intervention was allowed and the tax commission, the individual members thereof, and the Attorney General, and each of them were permitted to come in as parties defendant. In due course, all defendants joined in an answer, which, in substance, is as follows:

After formal denials and admissions it was alleged that the assessments, of which complaint is here made, for the year 1952 were duly and lawfully made by the assessor of El Paso county as provided by law; that the act providing for appropriations for a resurvey by the tax commission was regularly passed; that the moneys were expended in accordance with said Act; and it is admitted that under the authority of the Act the commission caused a taxing and building description and value calculation guard or manual to be prepared and issued to the several county assessors of the state; that all of the acts done by the assessor in connection with the assessment were required of him by law; that the assessor and the board of county commissioners published notices fixing a day certain for hearing of grievances of taxpayers; that plaintiffs did not appear before either the assessor or the board of county commissioners and did not avail themselves of the administrative remedies afforded by the Act as amended prior to the institution of this suit.

Plaintiffs contend that by defendants' answers it was admitted that the "pricing manual" was based on a supposed reproduction cost of structures; that the market value of such property did not enter into such valuation; that the tax commission presumed to order and require every county assessor to use said "pricing manual" and not to deviate from it and not to use any individual judgment in assessing property.

The case was tried December 18, 1953, and the testimony of only one witness was received. The evidence consisted largely of documentary exhibits admitted by agreement of counsel. Among such exhibits were tax receipt marked "Paid under protest," and a copy of the appraisal manual and instructions.

The trial court on December 31 entered its findings of fact and conclusions of law. The findings of fact contained twenty sections of carefully prepared findings, the material substance of which is, that the county assessor made the assessment according to the law then controlling and did so on his own volition and without coercion by the tax commission; further, that plaintiffs did not avail themselves of the administrative remedies; and finally, that the reappraisal program as provided by the Act does not violate the State Constitution, and more particularly section 8 of Article XIV; that the complaint fails to state a claim against defendants; that upon application of the law to the facts, defendants should have judgment against plaintiffs, and it was therefore so ordered and a motion for new trial was dispensed with.

To secure a review of this judgment plaintiffs have procured the issuance of a writ of error and now contend:

1. That the correct procedure was to pay the tax and sue for its recovery, and that it was unnecessary to make application for the administrative relief since the assessment and the tax levied thereon is illegal.

2. That the court's findings of fact that no coercion on the part of the tax commission existed is erroneous

450

and contrary to the admissions in the pleadings and to the evidence.

3. That the reappraisal violates section 8, Article XIV of the Colorado Constitution, and that the assessment, while nominally made by the assessor was in fact made by the Colorado Tax Commission, a duty which the Constitution vests solely in the assessor.

4. That the reappraisal was contrary to law and not based on market value.

The substance of the summary of argument presented by defendants in error is that this is not a class action, but is one by plaintiffs to obtain for themselves the repayment for the year 1952, which they paid under protest in 1953; and further, that since they did not attempt to avail themselves of their administrative remedies, they are bound by our decisions in *Bordner v. Board of County Commissioners,* 92 Colo. 81, 18 P. (2d) 323; *Miller v. Board of County Commissioners,* 92 Colo. 425, 21 P. (2d) 714; and *Citizens Committee v. Warner,* 127 Colo. 121, 254 P. (2d) 1005.

"Each county is responsible to the state for the full amount of tax levied for state purposes, excepting such amounts as are certified to be unavailable, double or erroneous assessments, as provided in the revenue law of 1902, and in all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer."

Section 114, chapter 142, '35 C.S.A., provides that if in the opinion of any taxpayer his property has been twice assessed, or if the property exempt from taxation has been assessed, or if personal property has been assessed of which said person was not possessed at the time of the assessment, or if any property has been assessed

too high, or if any property has been otherwise illegally assessed, he may appear before the assessor and make known the facts and if the assessment is erroneous the assessor shall correct the same. Further provision is made for the assessor to fix a day for such hearings and mail notice to each taxpayer whose property has been assessed at a valuation other than that given in the schedule filed by the taxpayer.

Section 116, chapter 142, '35 C.S.A., provides that if the objections made to the assessor are overruled in whole or in part, the assessor shall state in writing the grounds of his refusal and the taxpayer may appeal from such decision to the board of county commissioners of the county wherein the property is assessed on or before the first Monday in January following the assessment. The county commissioners shall act upon the complaint at the next regular session of the commissioners, at which time the board shall grant or refuse the prayer of the complaint in whole or in part as may seem just and proper and the board may in their judgment correct any error or mistake in such assessment made by the assessor whenever in their judgment justice and right may so require.

Plaintiffs, contending that the assessment and tax were illegal, paid the tax under protest and admit that they did not make application for relief either to the assessor or the board of county commissioners, because they were not required to do so in the case of an illegal assessment and tax. The cases above cited by defendants in error are abundantly clear on the proposition that application for relief from an erroneous assessment and tax must first be made to the administrative officials before an action in court could be maintained; however, it is said in our latest pronouncement, *Northcutt v. Burton, County Assessor,* 127 Colo. 145, 254 P. (2d) 1013, that the administrative remedies apply where the property has been twice assessed; is exempt; assessed when not possessed; assessed too high; or *other-*

*wise illegally assessed because of error capable of adjustment.*

The protest here made by the taxpayer was of itself a notice to the treasurer that the taxpayer regarded the tax as illegal and that the taxpayer intends, if need be, to enforce his right by appropriate proceeding. *Board of County Commissioners v. Cutter,* 3 Colo. 349.

"Where, however, the tax is illegally laid or, because of some unlawful act of the authorities is erroneous in its entirety, requiring *not adjustment,* but refund, a demand for which is denied, pursuant to section 281, suit may be brought to compel proper reimbursement. The term 'erroneous assessment' as used in this section implies more than mere over-assessment and refers to a tax levy that for any reason is wholly illegal or invalid." *Norcutt v. Burton, supra.*

According to our determination as above recited, as to what instances the taxpayer must resort to the administrative remedies it is abundantly clear that the Act gives no authority to the county assessor or to the board of county commissioners to test the legality of a tax when the grounds of illegality are constitutional. This is a ground beyond the power or authority of the administrative officers to adjust. The taxpayers here contend that the tax commission invaded the province of the assessor, and that is a question which the assessor could not decide, therefore resorting to the administrative bodies for relief would have been an empty gesture. Again I say that an excessive or erroneous tax requires pursuit of administrative remedies, but such pursuit is not required where the tax is claimed to be illegal. The administrative authorities do not possess judicial powers.

It is true that plaintiffs here alleged that the tax paid in 1953 was higher than the tax paid in 1952. As I read the complaint and study the contentions of plaintiffs, I am inclined to the view that this allegation was not a claim of excessive valuation, but rather a statement showing basis of their right to attack the assessment and tax

as illegal. Finally, I conclude that for the relief here sought, no administrative remedies were afforded them whereby their claim could thus be determined; and contrary to the contention of defendants in error, plaintiffs were, and are, free to bring and maintain this action without any showing that they had applied for and exhausted the administrative remedies as in other cases made and provided.

A part of the trial court's findings of fact is as follows: "That the assessor of El Paso county in using said formula and pricing manual as aforesaid, did so of his own volition and without coercion and usurpation by the said Colorado Tax Commission." It is contended by plaintiffs that this finding is directly contrary to the allegations of the complaint which were admitted by defendants. It is alleged in the complaint that the commission instructed the assessors of the state to take an inventory of every dwelling, building or structure in their counties and calculate the reproduction costs of such building using the figures appearing in the pricing manual prepared and sent to them by the commission, and that all such values were to be based upon a supposed reproduction cost and that the market value of such property would not enter into such valuations; that the commission sent supervisors to the various counties to ascertain whether or not the assessors were following the method of appraisal established by said commission in the pricing manual; and that the commission presumed to order and require every assessor to use the pricing manual and not to deviate from it and not to use any independent judgment as to the value of the property; and further, that the commission imposed this manner of assessment through the means of coercion based upon the penalties prescribed in the Act. The answer admitted these acts of the commission but averred that they were done in furtherance of the things required of it to be done by law; and denied that the acts were unlawful, but they were done pursuant to the authority invested in the commission by law. At the outset, counsel

for plaintiffs stated this situation as appearing from the pleadings and counsel for defendants stated, "That is correct." There are exhibits which substantiate these averments and admissions, and among the exhibits is the reappraisal system. The meaning of the exhibits and the order surely is beyond question and is unmistakable to the effect that the commission did order and require the assessor to adopt the system of assessment set forth in the manuals, and further supervised the assessors to the end that that system was applied.

The next contention of counsel for plaintiffs is that the reappraisal program as applied to the property of plaintiffs violates section 8 of Article XIV of the Colorado Constitution in that the Constitution provides for a county assessor to assess the property in his county for taxation; that the action here questioned substituted an assessment made by defendant commission for that made by the county assessor; and finally, that the assessment imposed is contrary to law because it is based on a reproduction value and not on the market value of the improvements assessed.

The problem before us originates not from any weakness or defect in the act creating the tax commission and prescribing its powers and duties, but from the interpretation put upon the Act and the power assumed therefrom by the commission. The Act, known as Article 5, chapter 142, '35 C.S.A., has, by this Court, been held to be constitutional in that the commission is properly invested with full power to supervise all county assessors to the end that all taxable property in each county shall be taxed at its full cash value. *People ex rel. Tax Commission v. Pitcher,* 56 Colo. 343, 138 Pac. 509. This holding clearly defines the power and duties of the commission, and confines the authority of the commission within the limits thus inferred. Any act of the commission that can be said to be more than supervisory in having all taxable property in each county taxed at its full value, is an assumed authority and illegal. The supervisory authority

granted of course includes the power of the commission to make all proper adjustments toward equalization of valuations to promote uniformity of taxation. The commission is empowered to prescribe uniform systems of procedure in the various assessors' offices, and to prescribe forms of returns to be made by the assessors to the tax commission office, and it is empowered to transmit such instructions as the commission deems conducive to the best interests of the state upon any subject affecting taxation, and finally, it is given the right to give a workable construction of any statute affecting taxation, the execution of which devolves on any county assessor.

Until now this Court has not expressed approval or disapproval of the manner in which tax reappraisals have been carried forward; however, full determination of the case at bar requires resolution. Counsel for plaintiffs says the reappraisal violates the Constitution. I believe this to be an intentional overstatement when so tersely made. I am inclined to believe counsel intended to say that the reappraisal as ordered, directed, and enforced by the commission is illegal and unconstitutional. I have herein mentioned the overall powers and duties of the commission as prescribed by section 157, chapter 142, '35 C.S.A. However, we find from a copy of the minutes of said commission as of February 11, 1948, the following:

"Your attention is directed to Section 2, Chapter 111, Session Laws of Colorado, 1947, relating to an appropriation for reappraisal, providing that moneys appropriated by the Legislature shall be used by the Colorado Tax Commission in carrying out a reappraisal. Further reference is made to the terms of Section 157, chapter 142, 1935 Colorado Statutes Annotated, wherein the Colorado Tax Commission is given full power and authority to implement assessment procedure by prescribing standards of assessments for both real and personal property, and also methods and forms whereby assessments may be made uniform in the several assessment jurisdictions in Colorado."

It thus appears that the commission determined that under Section 157, chapter 142, supra, that the legislature gave the commission full power and authority to implement assessment procedure *by prescribing standards of assessment.* No such authority can be found in the section referred to. It is one thing to exercise supervision over the county assessors to the end that all assessment of property be just and uniform and at its true full cash value and to prescribe forms of return for use of such assessors, but an entirely different thing to prescribe *standards of assessment.* This strikes at the very vitals of the primary assessing authority. It is true according to an exhibit in the case that on October 30, 1951, the commission directed the assessor of El Paso county to assess the taxable property in their county at its full cash value for the year 1952. Why should such direction be necessary in view of the statutory and constitutional provisions to that end, both of which are mandatory in the matter of property assessment. It is admitted by the record that the commission is not empowered by any statute to assess property. It also is admitted that the commission issued three manuals which set up a system of assessment and the method of calculating values based on either square footage or cubic volume and on reproduction costs; that all structures in the county were assessed according to the data provided in the manuals, and that the market value did not enter into such assessments; that the commission sent supervisors into the different counties to ascertain whether or not the reappraisal system was being followed; that the commission ordered every assessor to follow the pricing manual without deviation and not to use any independent judgment as to the value of the property; and that this reappraisal program valued all property based on reproduction costs as of 1941; and that the commission in referring to full cash value in the order dated October 26, 1951, was as to the 1941 value and not the present-day market value.

No further detail of the record is necessary to convince

that the commission thus assumed unto itself authority no place extended to it by the statutes. Argument is unnecessary to demonstrate that the values of 1941 were not the values of 1952, and disclosed no relation to the market value at the time of the assessment, and is wholly unrelated thereto, all in violation of the constitutional and statutory provisions. Neither does it require argument or demonstration to disclose that the method prescribed and forced to be followed by the commission completely deprives the constitutional and duly elected assessors of the counties of any judgment whatsoever. Section 8, Article XIV of the Constitution provides for the election of one county assessor in each county, that means that the electors of each county select an assessor presumably for the purpose of assessing their property and exercise the powers such assessing officers were performing at the time the Constitution was adopted. This Court in an early case, *Chase v. Boulder County*, 37 Colo. 268, 86 Pac. 1011, said that the powers and duties of such an officer were well defined at the time the Constitution was adopted and it is presumed that the framers of the original Act intended to invest them *alone* therewith, except as otherwise limited in that instrument. With this constituional provision and limitation, the legislature is not vested with authority to take this function of the county assessor and vest it in a central state authority, particularly as to the matter of primary or original assessment, except in cases where the local county assessor could not by the nature of things properly make an assessment, such as railroad property, for example. When the commission, as here, goes beyond mere correction, supplemental or review of a primary assessment, it is exceeding its authority and acting illegally, and is an interference with the constitutional duty imposed upon the county assessor.

The matter of the primary assessment being conferred by the Constitution upon the assessor elected in each county permits of no infringement by the state tax commission as is here disclosed. It follows that the assess-

ment of plaintiffs' property in accordance with the enforced direction of the tax commission according to its formula of assessment is not the true assessment of the county assessor and is therefore illegal, and plaintiffs are entitled to recover the taxes paid based upon an illegality.