No. 19,332.

W. J. STALDER, JR., ET AL. *v.* BOARD OF COUNTY COMMISSIONERS, ET AL.
(364 P. [2d] 389)

Decided August 21, 1961.   Rehearing denied September 11, 1961.

Messrs. Wood, Ris & Hames, for plaintiffs in error.

Mr. Donald E. Kelley, City Attorney, Mr. W. Keith Peterson, Assistant, for defendants in error.

Mr. Ira C. Rothgerber, Jr., Mr. William P. Johnson, Amici Curiae.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

The parties appear here in the same order as in the trial court and will be referred to accordingly.

Plaintiffs are the owners of two apartment houses in Denver, one known as Stalder's Manor House and the

other as Lanai Apartments. They commenced this action under C.R.S. '53, 137-3-37 and 38 against the Board of County Commissioners to recover taxes paid for the allegedly excessive valuation of their two properties for the year 1958. They asked for an order requiring defendants to refund the asserted excessive amount of taxes for 1958, paid by plaintiffs under protest.

Both claims for relief were tried to the court without a jury. It is conceded that all necessary steps had been taken to perfect an appeal from the appropriate administrative agencies to the court, hence the question of exhaustion of administrative remedies was not before the trial court. Following presentation of plaintiffs' case, the defendants moved to dismiss both claims and the motion was granted. Plaintiffs are here by writ of error seeking review of the judgment of dismissal.

The main thrust of plaintiffs' argument is that the valuation placed on the improvements is not a realistic one in relation to cost figures. The basis for this view is the use by plaintiffs of the flat plate system of construction. This consists of a concrete slab of uniform thickness throughout supported by concrete columns. In such construction the concrete floor is used as a finished floor and the underside of the flat plate is used as a finished ceiling. There are no beams or girders used to support these slabs. Consequently the use of the flat plate system is said to result in considerable savings for the builder. Walter J. Stalder, Jr., one of the plaintiffs here, stated in the course of his testimony that conventional reinforced structural steel construction would cost fifty per cent more than the flat plate type of construction. It was his opinion that the Commercial and Industrial Pricing Manual, used by the City in making its assessments, is obsolete because no provision is made for buildings constructed by the flat plate system; that such manual provides for only four classifications of construction: reinforced concrete or structural steel; solid masonry; metal; and frame. Since the flat plate type of building is alleg-

edly less expensive than either the conventional rein-
forced steel or masonry buildings, it is argued that the
manual imposes a system of valuation that is unfair on
its face.

With reference to the Stalder Manor it is alleged that
the 1958 assessment was $50,880.00 more than for 1957;
that the reason for the 1958 increase was the fact that
the owners of the Gotham Apartments in Denver had
complained of their assessment and that the assessor's
office raised the valuation on the Stalder Manor to coin-
cide with the rate assessed to the Gotham Apartments,
and that there had been no structural changes or additions
to the Stalder Manor between 1957 and 1958 which would
warrant such an increase in valuation.

In view of the fact that plaintiffs' case was dismissed
by the trial court for failure to state a claim, we must
view the evidence presented in the light most favorable
to the plaintiffs. Therefore, accepting plaintiffs' view
that the system used by the City to put a value on the
improvements on their property was unfair, we must
examine and determine the legal consequences. The
legislature of this state has provided for the means and
method of assessment. Thus C.R.S. '53, 137-3-17, states
as follows:

"In determining the true value of taxable property,
except as otherwise provided in this chapter the market
value shall be the guide. As to all classes or items of
property in respect to which it cannot be fairly said to
have market value, the price it would bring at a fair
voluntary sale thereof, the value of the use thereof, and
the capability of use, together with any other just method
of determination, may be considered by the assessor."

The power of the courts to review the determina-
tion made by the local assessor is limited by C.R.S. '53,
137-3-38, which states that "the court shall not review,
or give relief against an assessment merely because ex-
cessive, unless it shall appear manifestly fraudulent,
erroneous or oppressive."

■ In *Weidenhaft v. Commissioners* (1955), 131 Colo. 432, 283 P. (2d) 164, it was held that cost was only one factor to be considered in determining market value for assessment purposes. There the court said at page 444:

"It is true that the Commission issued a pricing manual and various other data and forms which the assessor was directed to use, but these were designed only for the aid and assistance of the assessor and as standards by which he could more accurately appraise the property under his jurisdiction. In effect these directives simply gave the technical steps necessary to make an accurate valuation appraisal. They contain every possible situation that one can think of that could confront an assessor or appraiser in determining a fair valuation, including not only types of buildings, but also depreciation, obsolescence, locality, proximity to lower-class construction, and all manner of things which should enable a competent appraiser to determine a real and fair evaluation rather than a mere estimate or guess."

■ The rule is well established that in the absence of fraudulent or arbitrary conduct on the part of the assessing officer, an excessive or disproportionate valuation for tax purposes will not be upset by the courts. See 51 American Jurisprudence §723, p. 666. Our decisions are in accord with this rule. See *Denver v. Lewin* (1940), 106 Colo. 331, 105 P. (2d) 854, *Citizens' Committee v. Warner* (1953), 127 Colo. 121, 254 P. (2d) 1005, *Weidenhaft,* supra. As said in *Citizens' Committee,* supra, at page 131:

"The evaluation of property for taxation, as determined by the assessor, is presumed to be right * * * , and one who attacks it has the burden of affirmatively and clearly showing that it is manifestly excessive, fraudulent or oppressive. * * * 'The presumption of official regularity applies to all of his acts' * * * , and mere error of judgment or overvaluation is not sufficient to overthrow his determination, 'nor is exactness necessary in working out a relative uniformity,' * * * between

properties of the same general classification," (citations omitted).

▮ The reasons for this rule are salutary ones. The legislature has delegated the power of assessment to local governing bodies. This was a proper legislative function. It would be improper for the courts to substitute their own valuation for that of the local governing body. The manner of obtaining uniformity in assessed valuations of property for taxation is exclusively for the legislature to determine, and when such manner has been prescribed courts will not grant relief, unless the assessment is actually fraudulent, or so excessive as to amount to fraud. We realize that this reasoning may seem harsh to parties complaining of alleged disparities in assessment. However, the proper forum for the presentation of their grievances is the legislature and not the judiciary. As said in *Colorado Tax Commission v. Midland Terminal Railway Co.* (1933), 93 Colo. 108, 110, 24 P. (2d) 745:

"Of course the officers are not infallible. No tax system that has yet been devised eliminates all errors of judgment made by such a body as the commission, or enables the work of the assessing officers to be verified by accurate scientific tests. All that can be expected under our system of government is that these officers shall act honestly upon the facts before them and in accordance with the law. It is not for the court to control the reasonable discretion of the commission or attempt to correct mere errors in the exercise thereof."

In the present case plaintiffs do not allege that the valuation of their property is in any way fraudulent or dishonest. Rather they ask to be relieved of a valuation alleged to be excessive in relation to construction costs. However, as was pointed out, the legislature has directed that in determining valuation market value shall be the guide. Certainly replacement cost is one indication of market value, but there are others as well. See *Weidenhaft,* supra.

▮ Plaintiffs introduced much evidence to support

the proposition that use of the flat plate type of con-struction results in substantial economy. However, cost is only one element of value, the evidence as to its effect on actual market value is equivocal. Plaintiff Stalder admitted on cross examination that the use of flat plate construction has no effect on the rent to be charged for the respective apartment units. Stalder also admitted that the Manor House had appreciated in value from the time of construction in 1955 to the year in question, 1958. The following exchange on cross examination is revealing:

"Q. The mere fact that X contractor builds a building under the same plans and specifications for X dollars, and Y contractor builds the same thing for Y dollars, one being higher than the other, if both were placed upon the market at the same time — identical structures — would a purchaser, so far as he is concerned, give any consideration to paying more for the one that cost more to the builder? A. No, sir. Q. I beg your pardon? A. No, sir. Q. Then your definition of market value, as used, was not related to the price that a seller would pay necessarily. More related to what you, as a builder, would like to get if you could sell it, is that true? A. No, sir. I said one method of calculating market value is to use cost. Q. Is it your position that the Assessor must use only one method? A. No, Sir. Q. And that it is proper for him to evaluate several methods and then arrive at something that is fair as sort of in-between? A. Any fair method would be acceptable to the tax-payer."

Under the circumstances, we cannot conclude that the valuation arrived at was outside the area where reasonable men might differ as to the true cash value of the assessed property or that the assessment was not made fairly in good faith. See *Knappton Towboat Company v. Chambers* (1954), 202 Or. 618, 276 P. (2d) 425, opinion corrected 277 P. (2d) 763. This rule must be applied to both the Lanai and the Manor House. It was

alleged that the reason for the increase in respect to the Manor House was that the owners of the Gotham Apartments had complained of their assessment, and that the increase had been made to coincide with the assessment on the Gotham. Even accepting this argument we must also accept the defendants' contention that the increase was otherwise merited. Plaintiff Stalder admitted that the Manor House had appreciated in value since its construction in 1955. The appreciation in value might well have justified the increase in assessment for 1958. Besides, the assessor has a duty to assess similar properties on a similar basis. And, a taxpayer who believes his neighbor is paying less taxes on his similar type building has a right to demand equalization.

Plaintiffs cannot complain that they were discriminated against. The evidence shows that all commercial apartment buildings employing the flat plate type of construction, including the Sherman Plaza, Camellia House, Versailles, Lanai and Stalder's Manor House, were originally placed in the same classification in arriving at the basic rate of assessment. After adjustments made by the Board of Equalization, the Lanai and Manor House were subsequently assessed at lower rates than the other apartment houses. We do not find that the action of defendants was arbitrary in respect to the subject properties.

The judgment is affirmed.