361 P.2d 769 (1961)
Charles SIMMONS and Harry Holmes, Sidney Brooks, Leon Brooks, Charles Simmons, Irving Toltz, and Milton Toltz, Sidney Brooks, Irving Toltz, and Charles Simmons, Plaintiffs in Error,
v.
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, Defendant in Error.
Nos. 19563-19565.
Supreme Court of Colorado. En Banc.
May 8, 1961.
Tinsley & Alperstein, Lakewood, for plaintiffs in error.
Hardesty & Juhan, Lakewood, for defendant in error.
McWILLIAMS, Justice.
We shall refer to the parties as they appeared in the trial court, where plaintiffs in error were plaintiffs and defendant in error was defendant.
The parties initiated three separate actions in the trial court upon three agreed statements of fact, as provided for by Rule 7(d) R.C.P.Colo. From these statements the following facts are ascertained. Plaintiffs are owners of certain real property situate in Jefferson County, which property is used as trailer courts. The County Assessor in the year 1957 assessed plaintiffs' property in the same manner as like land situate in the same general neighborhood was assessed, even though such other land was not used as trailer courts. In 1958 the Assessor adopted a new and different method of assessing land used as a trailer court, the result being that the assessed value of plaintiffs' land was greatly increased. In each instance the plaintiffs first protested the increased assessment to the County Assessor, who after a hearing denied all protests. Plaintiffs then appealed to the Board of County Commissioners, sitting as the Board of Equalization, and after hearing the Board of Equalization also overruled plaintiffs' protest. Plaintiffs did not appeal the decision of the Board of *770 Equalization to the District Court as provided by C.R.S. '53, 137-3-38, but rather paid the 1958 general property tax upon the property involved under protest.
From the agreed statement it is also learned that all other owners of land used as trailer courts in Jefferson County also received similar increases in their assessment. Certain other owners whose protests had been successively overruled by the County Assessor and the Board of Equalization appealed to the District Court before the first Monday in January following the assessment, as provided by C.R.S. '53, 137-3-38, and paid the taxes so assessed under protest. On September 14, 1959 the court declared the assessments so appealed to be grossly excessive and accordingly reduced the 1958 assessments and entered judgments in favor of the property owners against the Board of County Commissioners for the amount of taxes paid in excess of the lawful assessment.
Following determination of those actions plaintiffs petitioned defendant, not for recovery of the entire amount of the taxes paid for 1958, but for a refund in an amount representing the alleged illegal increase in their assessment for 1958 over 1957. Their petitions being denied, the plaintiffs on February 25, 1960 instituted the present actions by filing with the trial court the agreed statements of facts above referred to. Three separate actions were brought by plaintiffs against the Board of County Commissioners, which by agreement were consolidated for purposes of trial, and writs of error to the judgments of dismissal duly entered by the trial court are consolidated for consideration in this Court.
In dismissing the claims for refund the trial court held that the remedy of a taxpayer who believes that his real property has been over-valued and therefore over-assessed by the County Assessor is found under C.R.S. '53, 137-3-37 and 38 and that where, as here, the only complaint is that the assessment is excessive, the taxpayer cannot maintain an action under C.R.S. '53, XXX-XX-XX. In so holding the trial court was correct.
The stipulated facts present a case of alleged over-valuation of real property, and not that of a tax levy wholly illegal or invalid. The plaintiffs tacitly recognize such to be true since they do not seek recovery of the entire tax paid by them, but only that portion thereof resulting from the alleged over-assessment. While the factual situation presented here has not been before this Court in its exact present form, the Court has nevertheless on several occasions considered the general problem of relief available to one who feels that his real property has been over-valued by the County Assessor. In Hays v. City and County of Denver, 127 Colo. 154, 254 P.2d 860, 861 a problem completely dissimilar to that in the instant case was considered; nevertheless recognition and affirmation was given to the remedy provided by statute for a taxpayer who believes his property has been over-assessed. The Court in that case stated: "Sections 114 and 116, chapter 142, '35 C.S.A. as amended by chapter 158, S.L. Colo. '43 [same as C.R.S. '53, 137-3-37, 38], set out the procedure to be followed by a taxpayer who feels that his property has been assessed too high. If no relief be had before the assessor, he may then have the matter reviewed by the County Board of Equalization. In the advent of an adverse holding there, he may appeal to the district court. Full and complete remedies are provided by statute, and these remedies must be pursued by a property owner who feels aggrieved." (Emphasis ours.) In the instant case plaintiffs each had the statutory right to appeal the ruling of the Board of Equalization to the District Court "on or before the first Monday in January following said assessment * * *." They did not do so within the time prescribed by the statute and by their own inaction have lost their remedy. Having learned that other taxpayers similarly situated had appealed to the district court within the time permitted by our statute and had obtained substantial relief, they then sought to gain the same result *771 by proceeding under C.R.S. '53, XXX-XX-XX providing, in part, as follows: "* * * where any person shall pay any tax * * * which thereafter shall be found to be erroneous or illegal, whether the same be due to erroneous assessment, to improper or irregular levying of the tax, or to clerical or other errors or irregularities, the board of county commissioners * * * shall refund the same without abatement or discount to the taxpayer." (Emphasis ours.) In rejecting the contention that a taxpayer who feels his property is over-valued has two remedies, i. e. C.R.S. '53, 137-3-38 or C.R.S. '53, XXX-XX-XX, this Court in Miller v. Board of County Commissioners, 92 Colo. 425, 21 P.2d 714, 717 said: "That since said sections * * * were both portions of the same act, passed at the special session of the General Assembly of 1902, it could not have been the intent of the Legislature to provide two methods of procedure for the same wrong, growing out of the same facts * * *." Also in Northcutt v. Burton, 127 Colo. 145, 254 P.2d 1013, 1017 the term "erroneous assessment" was defined as "more than mere over-assessment and refers to a tax levy that for any reason is wholly illegal or invalid." In the same case it was said that the statutory remedy provided by C.R.S. '53, 137-3-38 applies "where property has been * * * assessed too high." See, also, Weidenhaft v. Board of County Commissioners, 131 Colo. 432, 283 P.2d 164 where it is said: "* * * one [who] attempts to maintain a proceeding for a tax refund pursuant to the statute above cited [C.R.S. '53, 137-1-22] has the burden of showing that the tax was illegally laid, is erroneous in its entirety, and incapable of adjustment. If the property be assessed too high, or illegally assessed because of error capable of adjustment, then the administrative remedies must be pursued." See, also, South Broadway National Bank of Denver v. City and County of Denver, 10 Cir., 51 F.2d 703. The trial court was correct in holding that under the present circumstances plaintiffs' only remedy was that provided in C.R.S. '53, 137-3-37 and 38 and that by their inaction plaintiffs had lost even the right, inasmuch as they failed to appeal the adverse decision of the Board of Equalization to the District Court on or before the first Monday in January following the assessment.
The Court is cognizant of the fact that C.R.S. '53, XXX-XX-XX was enacted by the General Assembly of 1957. However, all sections of this article are largely re-enactments of earlier statutes. Specifically C.R.S. '53, XXX-XX-XX is a counterpart of C.R.S. '53, 137-1-22, and C.R.S. '53, 137-1-22, 137-3-37 and 38 were all adopted by the General Assembly in 1902.
The judgments are affirmed.
FRANTZ and DAY, JJ., not participating.
DOYLE, J., dissents.
DOYLE, Justice (dissenting).
I disagree with the majority holding that plaintiffs herein have no remedy. In order to understand the source of my disagreement, it is necessary to cite the facts in somewhat more detail.
According to the agreed statement of facts, the differences in the assessments between the years 1957 and 1958 were substantial. For example, in the case involving Brooks, Toltz and Simmons, the land and improvements were assessed in 1957 in the total amount of $10,440. In 1958 the land was assessed in the amount of $42,160, the improvements were assessed in the amount of $37,383, or a total of $79,540. The ad valorem tax for 1958 was $4,937.45, or $4,289.04 higher than it would have been had the assessor's evaluation of such property been increased above the valuation for the year 1957. In arriving at a valuation for the year 1958 the assessor's procedure was to place a value on each trailer space, together with an additional sum for each trailer space for availability of utilities.
In Civil Actions No. 12921 and No. 12922 involving appeals from the County Board of Equalization by other taxpayers similarly *772 situated wherein the methods used were, according to the agreed statement, the same as those employed in the instant cases, the trial court voided the assessment and the court's remarks shed some light on the issue before us. These findings and conclusions follow:
"* * * That the assessor of Jefferson County assessed each trailer site space for land valuation at $350.00 per space, regardless of variance in size of trailer spaces. That subsequent to Plaintiffs' protest before the County Board of Equalization the assessor was directed to re-assess subject property by using a formula of $350.00 per space applicable to a 100% trailer court. Trailer courts not considered as a 100% court would be decreased from the $350.00 trailer space figure by certain percentage considerations being given to such factors as rate of occupancy, trailer arrangement and eye appeal. Plaintiffs' property was assessed on the above basis as a 96.7% area or at the rate of $338.50 per trailer space for 86 spaces.
"That the assessed valuation on Plaintiffs' real property including land and improvements for the taxable year 1958 as assessed by the assessor for Jefferson County, Colorado is manifestly erroneous, oppressive and excessive.
"That the Jefferson County Assessor by the method used in arriving at tax assessments for the year 1958 did in effect enter into the field of taxation and justified or attempted to justify the tax assessment on the basis of a tax on good will, management, occupancy, eye appeal and trailer arrangement and in effect entered into a field of taxation in competition with the income tax."
Assuming that the conclusion of the majority that C.R.S. '53, 137-3-37 applies only to a case of overassessment and that XXX-XX-XX applies only to an illegal, invalid or erroneous assessment, I am still unable to accept the majority's decision that the assessment in the case at bar is merely excessive and that it cannot therefore be tested in an action to recover taxes paid under protest pursuant to XXX-XX-XX, supra. The effect of the majority opinion, as I view it, is to nullify in large measure the remedy to recover taxes paid under protest because if the taxpayer cannot bring an action under the present circumstances wherein the assessment was found to be manifestly erroneous, oppressive and excessive and constituting a fraud upon the "plaintiffs as taxpayers" he cannot proceed to recover such taxes in any case. I at least am convinced that where an arbitrary method of assessment based upon a mechanical formula having no relation to true cash value is admittedly employed, the product of the assessment is illegal and erroneous within the terms of the cases relied upon in the majority opinion, that is, Miller v. Board of County Commissioners, 92 Colo. 425, 21 P.2d 714 and Northcutt v. Burton, 127 Colo. 145, 254 P.2d 1013.
In the above cases the decisions distinguish between mere overassessment and assessments which are wholly illegal or invalid. I have no quarrel with these standards. It is the application of the facts to them which I consider obnoxious. I believe that the majority is influenced to some extent by the fact that the action is for less than the entire amount. However, I think that even the requirement of entire voidness is satisfied in the present cases; the assessment in its entirety could have been declared void and the entire amount of tax could have been recovered. The fact that the plaintiffs have asked for something less than the whole amount of the tax does not argue that the assessment is not wholly invalid.
I believe that the majority is also unduly influenced by the fact that parties similarly situated were successful in other cases proceeding pursuant to 137-3-37, supra, but this practical demonstration is not binding on us. The validity of other procedures is not before us. We are merely required to determine whether the assessments in the present cases were erroneous so as to justify the form of proceedings which have been *773 taken. To my mind, when the assessor adopts a formula having no semblance of legality and does so by reaching to the top of his head, so to speak, the product of the arbitrary method employed is "illegal" or "erroneous."
In the case of Antero & Lost Park Reservoir Co. v. Board of County Commissioners, 75 Colo. 131, 225 P. 269, this Court recognized that a wrong method of assessment produces an illegal assessment. See also Antero & Lost Park Reservoir Co. v. Park County Com'rs, 65 Colo. 375, 177 P. 148. Moreover, it was not necessary for the plaintiffs herein to appeal to the district court pursuant to 137-3-37 before undertaking the present action. Goldsmith v. Standard Chemical Co., 10 Cir., 23 F.2d 313. This argument made by defendants is self-defeating in that it tacitly declares that there is a single integrated remedy rather than mutually exclusive remedies as held by the majority.
It would be possible to demonstrate that the procedure followed by the assessor in the case at bar is in law illegal or erroneous by references to the cases rather than merely an excessive assessment. I do not consider this necessary. It seems plain to me that it was and is a mistake of law and hence is illegal. The fact that it is also grossly excessive should not rob it of its palpable illegality so as to rob plaintiffs of a remedy.
The only additional commentobjection that I wish to make is that the procedural attitude approved by the majority opinion strikes me as too mechanical and legalistic. It is conceivable to me that the next time an aggrieved litigant follows the appeal procedure described and approved by the majority, he may be told that he again made a fatal mistake and that his remedy in reality was in the area of XXX-XX-XX. In other words, I would recommend a less restrictive judicial attitude toward these remedies so as to prevent the placing of such a high premium upon correct selection of the desired "writ." I find it offensive that these litigants here have been admittedly subjected to gross injustice and are nevertheless frustrated in their efforts to right the wrong merely because the majority concludes that in their pursuit of justice they zigged when they should have zagged.