603 P.2d 976 (1979)
The People of the State of Colorado, Petitioner-Appellee,
In the Interest of Grace PAIZ, Respondent-Appellant.
No. 78-1130.
Colorado Court of Appeals, Div. II.
November 29, 1979.
Paul J. Willumstad, Pueblo, for petitioner-appellee.
Theodore R. Shaman, Jr., Pueblo, for respondent-appellant.
RULAND, Judge.
Respondent appeals from an order denying her motion to dismiss proceedings initiated pursuant to the Colorado statutes governing treatment of the mentally ill. We affirm.
The record reflects that respondent sought voluntary treatment as a patient at the Colorado State Hospital. On May 5, 1978, respondent was taken into custody for 72-hour treatment and evaluation by a physician of the hospital pursuant to the emergency procedure set forth in § 27-10-105(1)(a), C.R.S.1973 (1978 Cum.Supp.). An emergency mental illness report was prepared by that physician and filed with the court pursuant to § 27-10-107(2), C.R.S. 1973 (1978 Cum.Supp.).
The report reflects that the physician was notified of respondent's condition by the team leader on the hospital ward where respondent was being treated. The report also reflects that the respondent had received psychiatric care at the hospital at some time prior to her voluntary hospitalization. In support of the action taken by the physician, the report states that respondent was "tense," "illogical," "mumbling," and "hearing voices." While the respondent appeared to be dressed neatly, was *977 polite, and knew who she was, where she was, the date, and how she felt, the report concludes by stating that respondent appeared to be mentally ill, and, as a result, gravely disabled because she "has not been able to regulate her diabetic diet or medication," that "she has no money or anyone with whom she could stay but she is requesting discharge to her own apartment which she has just forfeited on," and that "she has little insight into her problems and requires 24 hour supervision." Section 27-10-102(5), C.R.S.1973 (1978 Cum.Supp.), defines a gravely disabled person as one who "as a result of mental illness, is unable to take care of his basic personal needs or is making irrational or grossly irresponsible decisions concerning his person and lacks the capacity to understand this is so."
Acting pursuant to § 27-10-107(5), C.R.S. 1973 (1978 Cum.Supp.), the court entered an order appointing counsel for the respondent on May 11, 1978. Respondent filed a motion to dismiss the proceeding on July 11, 1978, and a hearing on this motion was held on August 1, 1978. The court deferred ruling on the motion apparently in order to consider briefs submitted by the parties. The court ultimately denied respondent's motion on October 30, 1978.
On August 8, 1978, an "Extended Certification for Short Term Treatment" was filed by the hospital pursuant to § 27-10-108, C.R.S.1973. In support of this certification, a hospital physician stated:
"Schizophrenic, mentally retarded woman who is pregnant, has diabetes mellitus  which now requires daily insulin injection which pt. won't take without supervision. All her previous children are now in foster homes [because of] her neglect & poor care of them. Failed to keep Dr's. appt. for follow up after birth of last child. Refuses to tell gynecologist how many children she has had because she was angry with another patient. Continually asks employees to give her insulin shots rather than self administer them. Attempts to go drinking in bars when out on pass; 7/6/78 tried to break windows on ward & threatened to kill employees."
Respondent did not request a hearing or otherwise challenge the contents of this report. See § 27-10-107(6), C.R.S.1973. A petition for long term certification was then filed on October 6, 1978, pursuant to § 27-10-109, C.R.S.1973.
A hearing on the petition for long term commitment was held on November 3, 1978. Respondent reasserted her motion to dismiss, and the motion was again denied. Respondent then elected not to participate in the hearing, and the court entered an order directing that respondent be confined for long term treatment.
A review of respondent's contentions on this appeal requires a summary of certain statutes. The "emergency procedure" provision, § 27-10-105(1)(a), C.R.S.1973 (1978 Cum.Supp.), states that:
"When any person appears to be mentally ill and, as a result of such mental illness, appears to be . . . gravely disabled,. . . a professional person, upon probable cause . . . may take the person into custody . . . and place him in a facility . . . for a seventy-two-hour treatment and evaluation."
A "professional person" is defined as one who is licensed to practice medicine or certified to practice psychology in this state. See § 27-10-102(11), C.R.S.1973. A "facility" is a public hospital or a licensed private institution. See § 27-10-102(4.5), C.R.S. 1973 (1978 Cum.Supp.).
Section 27-10-106, C.R.S.1973 (1978 Cum. Supp.), authorizes any individual to petition the court for an order directing that a person who is gravely disabled be confined for 72-hour evaluation and treatment. After the petition is filed, it is referred by the court to a facility or professional person, and the respondent is "screened" to determine whether there is probable cause to believe the allegations of the petition prior to entry of an order for treatment and evaluation.
Section 27-10-105(1)(b), C.R.S.1973 (1978 Cum.Supp.), also authorizes the court to order a person taken into custody for 72-hour evaluation and treatment at a facility based upon an affidavit containing sufficient *978 facts to establish that such person appears to be gravely disabled.
Because respondent at first voluntarily submitted to treatment at the hospital, and in view of the legislative intent expressed in § 27-10-101(1)(d), C.R.S.1973, to encourage the use of voluntary treatment, respondent first contends that she could not be confined for a 72-hour evaluation except by court order under either § 27-10-105(1)(b) or § 27-10-106. We find no merit in this contention.
Where the language of the statute is plain, its meaning clear, and no absurdity is involved, it must be applied as written. See Harding v. Industrial Commission, 183 Colo. 52, 515 P.2d 95 (1973); Myers v. Woodall, Colo.App., 592 P.2d 1343 (1978). While the General Assembly has expressed an intent to encourage voluntary treatment, see Goedecke v. State of Colorado, ___ Colo. ___, 603 P.2d 123 (1979), use of the emergency procedure has not been limited to patients who decline voluntary treatment. Indeed, so to limit the use of that procedure could have substantial adverse consequences. A patient admitted for voluntary treatment who obviously has become a serious danger to himself or to others might have to be released from the hospital pending the completion of court proceedings pursuant to § 27-10-105(1)(b) or § 27-10-106. We conclude that confinement for 72-hour evaluation pursuant to § 27-10-105(1)(a) was proper.
Respondent next argues that the emergency report failed to establish either probable cause to believe that she was gravely disabled or that a sufficient emergency existed to confine her involuntarily for a 72-hour evaluation. Based upon this argument, respondent asserts that all subsequent proceedings for short and long term treatment were invalid. We also reject these contentions.
Probable cause exists under the statute for a licensed physician to take a patient into custody for a 72-hour evaluation when the facts and circumstances within the physician's knowledge and of which he has reasonably trustworthy information from others warrant the belief that the patient may be gravely disabled. See People v. Williams, 186 Colo. 72, 525 P.2d 463 (1974). We are persuaded that here, as in the criminal law, probable cause should not be measured by the yardstick of legal technicality, but by the factual and practical considerations upon which a reasonable physician acts. See Finley v. People, 176 Colo. 1, 488 P.2d 883 (1971); People v. Derrera, 40 Colo.App. 86, 570 P.2d 558 (1977). And, as one of its dimensions, the physician's training and experience may be considered. See People v. Casias, 193 Colo. 66, 563 P.2d 926 (1977); People v. Boileau, 36 Colo.App. 157, 538 P.2d 484 (1975). Thus, we find no merit in respondent's contention that the veracity of the ward team leader must be established by information in the report.
We also agree with the trial court's finding that the report established probable cause to justify the action taken. Probable cause to believe that respondent was gravely disabled was established by the fact that respondent was hearing voices, mumbling, illogical, and unable to regulate her medication for a serious physical ailment. The existence of an emergency was established by the fact that respondent had requested discharge from the hospital, had no place to go, and had no insight into her problems.
Order affirmed.
SILVERSTEIN and VAN CISE, JJ., concur.