GATES RUBBER COMPANY; Honeywell Information Systems, Inc.; and Samsonite Corporation, Petitioners,

v.

The STATE BOARD OF EQUALIZATION OF the STATE OF COLORADO; the County Board of Equalization for the County of Adams, State of Colorado; Arapahoe County Board of Equalization; Board of Equalization of the County of Boulder, State of Colorado; John Murphy, Margaret Markey, and Robert Jenkins, In Their Official Capacities as Members of the Board of Equalization of the County of Boulder; El Paso County Board of Equalization; County Board of Equalization and the Board of County Commissioners for the County of Jefferson, State of Colorado; Larimer County Board of Equalization and the Board of County Commissioners for the County of Weld, State of Colorado; Jefferson County School District R-1; and Weld County School District RE-4; Board of Equalization of the City and County of Denver and the City and County of Denver, Respondents.

ADOLPH COORS COMPANY; Coors Porcelain Company; and Coors Container Company, Petitioners,

v.

The STATE BOARD OF EQUALIZATION OF the STATE OF COLORADO; the County Board of Equalization for the County of Adams, State of Colorado; Arapahoe County Board of Equalization; Board of Equalization of the County of Boulder, State of Colorado; John Murphy, Margaret Markey, and Robert Jenkins, In Their Official Capacities as Members of the Board of Equalization of the County of Boulder; El Paso County Board of Equalization; County Board of Equalization and the Board of County Commissioners for the County of Jefferson, State of Colorado; Larimer County Board of Equalization and the Board of County Commissioners for the County of Larimer, State of Colorado; County Board of Equalization and the Board of County

Commissioners for the County of Weld, State of Colorado; Jefferson County School District RE-1; and Weld County School District RE-4, Respondents.

Nos. 87SC259, 87SC260.

Supreme Court of Colorado,
En Banc.

Feb. 21, 1989.

**1190**

Bradley, Campbell & Carney and Victor F. Boog, Golden, and Gorsuch, Kirgis, Campbell, Walker and Grover, Malcolm M. Murray, and Vicki J. Fowler, Denver, for petitioners.

Stephen H. Kaplan, City Atty., and Robert F. Strenski, Asst. City Atty., Denver, for respondent City and County of Denver.

Larry Vana, County Atty., and James E. Heiser, Asst. County Atty., Littleton, for respondent Arapahoe County.

Beth Whittier, County Atty., and John Franklin, Asst. County Atty., Colorado Springs, for respondent El Paso County.

Charles P. Siner and James D. Robinson, Brighton, for respondent Adams County Bd. of Equalization.

Patrick R. Mahan, County Atty. and Joanne Smith, Asst. County Atty., Golden, for respondent Jefferson County.

Isaacson, Rosenbaum, Spiegleman, Woods, Levy & Snow, P.C. and Edward T. Ramey, Denver, for State Bd. of Assessment Appeals of the State of Colo.

PER CURIAM.

We granted certiorari to determine the rate of interest a prevailing taxpayer is entitled to recover when following the protest and adjustment procedure in sections 39–5–122, 39–8–106, 39–8–108, and 39–8–109, 16B C.R.S. (1982). Following the judgment of the court of appeals in *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984), the Denver

District Court ordered the Colorado State Board of Equalization and various county boards of equalization (collectively the Boards) to refund an overpayment of taxes in the 1979 and 1980 tax years to B.A. Leasing Corporation, Gates Rubber Company, Honeywell Information Systems, Inc., Samsonite Corporation, Adolph Coors Company, Coors Porcelain Company, Coors Container Company, and other taxpayers (collectively the Taxpayers). In addition, the district court ordered the Boards to pay the Taxpayers interest on the overpayment of taxes at the annual rate of six percent under section 39–8–109, rejecting the Taxpayers' claim that they were entitled to recover interest at the annual rate of twelve percent under section 39–10–114(1)(b), 16B C.R.S. (1982). The court of appeals affirmed the judgment of the district court in *B.A. Leasing Corp. v. State Board of Equalization,* 745 P.2d 254 (Colo. App.1987), based on its analysis of the applicable statutes and *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo. 1987). While we do not entirely agree with the reasoning of the court of appeals, we affirm its conclusion that the Taxpayers are entitled to recover interest on the overpayment of taxes at the annual rate of six percent.

I.

This case arose as a dispute as to whether depreciation of certain personal business property could be allowed after the base year of 1973 so as to lower the amount of tax each Taxpayer would be required to pay in the 1979 and 1980 tax years. Assessors of various counties decided that depreciation could not be allowed after the base year, and valued the properties at a rate the Taxpayers believed to be excessive. Following a series of appeals begun under section 39–5–122, the Denver District Court upheld the decision of the assessors.[1] The

---

1. The Taxpayers protested the assessment valuation to various county assessors pursuant to § 39–5–122(2), who denied their protests. They then appealed to their respective county boards of equalization pursuant to § 39–5–122(3) and § 39–8–106(1). The county boards of equaliza-

tion also denied their protests. They then appealed to the Colorado State Board of Assessment Appeals pursuant to § 39–8–108(1). In decisions on January 20, February 25, and February 26, 1981, the Colorado State Board of Assessment Appeals reversed the decisions of

court of appeals reversed the judgment of the district court in *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984), holding that the Taxpayers were entitled to depreciate the property after the base year.[2] This became a final judgment when this court denied the petition for certiorari on January 21, 1985, and its propriety is not now before us. The court of appeals remanded the case to the district court with directions to enter judgment in favor of the Taxpayers.

On August 27, 1985, the district court ordered the Boards to reduce their valuations of the personal business property and to refund the overpayment of taxes to the Taxpayers.[3] The district court also awarded the Taxpayers interest from the date of overpayment at the annual rate of six percent pursuant to section 39–8–109, rejecting the Taxpayers' claim that they were entitled to recover interest at the annual rate of twelve percent pursuant to section 39–10–114(1)(b).[4]

The Taxpayers appealed to the court of appeals solely on the issue of whether the district court erred in awarding them interest at the annual rate of six percent for overpayment of taxes due to failure to permit depreciation of personal property beyond the base year of 1973.

The court of appeals affirmed the judgment of the district court in *B.A. Leasing Corp. v. State Board of Equalization,* 745

---

the county boards of equalization and ordered the treasurers of the respective counties to lower their valuations of the properties.

Rather than appealing the decision of the Board of Assessment Appeals solely to the district court pursuant to § 39–8–108(2) and § 24–4–106, however, the Boards appealed to the Colorado State Board of Equalization. Despite the Taxpayers' motion to dismiss the Boards' appeal for lack of subject matter jurisdiction, the Board of Equalization heard the appeal, reversed the decision of the Board of Assessment Appeals, and reinstated the original assessments. The Taxpayers then appealed the decision of the Board of Equalization to the Denver District Court on August 6, 1981, pursuant to § 24–4–106(4), which upheld the decision of the Board of Equalization.

The court of appeals subsequently concluded that the order of the Board of Equalization was in excess of its jurisdiction and void because it was acting to assess rather than equalize property values, which violated article X, section 15 of the Colorado Constitution. *See BQP Industries,* 694 P.2d at 341 (citing *Union Pac. R.R. Co. v. Board of Comm'rs,* 35 F.2d 785 (10th Cir.1929)).

**2.** The court of appeals in *BQP Industries* did not determine whether failure to allow depreciation of personal property beyond the base year of 1973 resulted in a tax that was "erroneous or illegal" within the meaning of § 39–1–113 and § 39–10–114. Rather, the court of appeals construed §§ 39–1–104(9)(a) and –104(9)(c) together with § 39–1–103(5)(a), and concluded from an analysis of applicable statutes that the assessment statutes were ambiguous and that the Taxpayers were entitled to depreciate their personal property from the base year to the date of assessment because that was the intent of the legislature. *BQP Industries,* 694 P.2d at 345. As a result, the court of appeals ordered a refund of taxes to those Taxpayers who properly appealed. *Id.*

Neither the district court on remand from *BQP Industries* nor the court of appeals in *B.A. Leasing* decided whether *BQP Industries* had held that failure of the counties to permit depreciation of personal property beyond the base year of 1973 resulted in an "erroneous or illegal" tax. The Taxpayers argue that *BQP Industries* should be read as holding that failure to allow such depreciation resulted in an "erroneous or illegal" tax within the meaning of § 39–1–113 and § 39–10–114. The Boards argue that *BQP Industries* should be read as holding that failure to allow such depreciation resulted in an overvaluation under § 39–5–122 rather than an "erroneous or illegal" tax.

We need not decide this issue, however, because we hold that a taxpayer who prevails after seeking relief under the protest and adjustment procedure is entitled to pursue the protest and adjustment remedy but not the abatement and refund remedy. We therefore express no opinion as to whether misconstruction of ambiguous assessment statutes rises to the level of an "erroneous or illegal" tax under § 39–1–113 and § 39–10–114.

**3.** According to the district court order, the total amount of overpayment of taxes was $602,618.13 in tax year 1979 and $4,515,262.87 in tax year 1980.

**4.** Section 39–10–114(1)(b) provides that the interest rate for taxes erroneously or illegally levied and collected is the same as the rate for penalty interest on unpaid taxes described in section 39–10–104. Section 39–10–104(3)(a) provides that penalty interest accrues "at the rate of one percent per month," which is equal to an annual rate of twelve percent.

Section 39–10–114(1)(b) is designed to permit taxpayers to recover the same amount of interest from the taxing authorities as the taxing authorities could recover in penalty interest had the taxpayer not paid a proper tax assessment in the first place.

P.2d 254 (Colo.App.1987). It concluded that the Taxpayers were entitled to recover interest at the annual rate of six percent pursuant to section 39–8–109. It recognized that two procedures for correcting assessment errors had been created by the General Assembly: the protest and adjustment procedure of section 39–5–122, and the abatement and refund procedure of sections 39–1–113 and 39–10–114. The court of appeals noted that the original purpose of the protest and adjustment procedure was to permit appeals of incorrect property valuations by the county assessors, while the purpose of the abatement and refund procedure was to permit appeals of taxes which were "wholly erroneous or illegal." It stated that these distinctions were to a large extent eliminated by this court in *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo.1987), and held that the "distinctions which remain relate primarily to the time at which the taxpayer commences his administrative proceedings, *i.e.*, prior or subsequent to levy, and at whom they are directed, *i.e.*, the Assessor or the Board of County Commissioners." *B.A. Leasing*, 745 P.2d at 256. The court of appeals concluded that the Taxpayers should recover interest for the overpayment of taxes at the annual rate of six percent under section 39–8–109 because they had elected to follow the protest and adjustment procedure of section 39–5–122.

## II.

The Taxpayers argue that they are entitled to recover interest at the annual rate of twelve percent under section 39–10–114(1)(b) even though their appeal was initiated under section 39–5–122. They disagree with the court of appeals characterization that their appeal represented an "election" to proceed under section 39–5–122. Instead they contend they had no choice but to proceed under section 39–5–122 because three cases which have since been overruled held that failure to proceed under section 39–5–122 would result in dis-

missal for failure to exhaust administrative remedies. They interpret *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo.1987), to permit a taxpayer who initially sought relief under section 39–5–122 to recover interest under section 39–10–114(1)(b) when the tax was levied erroneously or illegally. The Boards argue that the Taxpayers cannot recover interest under section 39–10–114(1)(b) because they followed the protest and adjustment procedure of section 39–5–122 rather than the abatement and refund procedure of sections 39–1–113 and 39–10–114, and because section 39–10–114(1)(b) did not become effective until after the protests were initiated.[5] We agree with the conclusion of the court of appeals that a taxpayer who prevails after protesting under section 39–5–122 may recover interest under section 39–8–109 but not under section 39–10–114(1)(b).

### A.

The protest and adjustment procedure for protesting a property assessment is initiated under section 39–5–122. Section 39–5–122(2) provides in pertinent part that a taxpayer may protest a property valuation to the county assessor "[i]f any person is of the opinion that his property has been valued too high, or has been twice valued or is exempt by law from taxation, or that he did not own taxable property on the assessment date, or that property has been erroneously assessed to him." Section 39–5–122(3) permits a taxpayer whose protest to the assessor was denied to appeal to the county board of equalization. A taxpayer who loses at the county board of equalization may appeal to the Colorado State Board of Assessment Appeals, *see* § 39–8–108(1), or to the district court of the county in which the property is located, *see* § 39–8–108(2). Low, *Appealing Property Tax Assessments*, 15 Colo.Law. 798, 804 (1986). Appeal from the district court may be made to the court of appeals, and from there to this court as provided by C.A.R.

5. Section 39–10–114(1)(b) was enacted in 1981, effective January 1, 1982. Ch. 446, sec. 2, § 39–10–114, 1981 Colo.Sess.Laws 1837, 1838.

The protests in these appeals were initiated in 1979 and 1980.

52(b). If the taxpayer prevails and the respondent does not appeal, then the taxpayer may present the final order to the county treasurer, who will refund the overpayment of taxes "together with interest thereon at six percent per annum" from the date of overpayment. § 39–8–109.

The protest and adjustment procedure is initiated by taxpayer protest in June of the year the property tax is levied, which is almost ten months before the tax is due. *See* § 39–5–122; § 39–10–104; *Benbrook*, 735 P.2d at 864. If the taxpayer prevails before the tax is due, then the county treasurer simply reduces the tax to reflect the proper assessment. If the taxpayer's protest under section 39–5–122 is not complete by the time the tax is due, then the taxpayer must pay the amount in dispute and is entitled to demand a refund of the overpayment of taxes plus interest at the annual rate of six percent under section 39–8–109 if the protest is successful.

Sections 39–1–113 and 39–10–114 describe the abatement and refund procedure. Section 39–10–114(1)(a) provides that a taxpayer can demand a refund of taxes "levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, or clerical error." Section 39–10–114(1)(a) specifies no time for seeking a refund of taxes other than stating that "in no case shall an abatement or refund of taxes be made more than six years after the taxes were due." [6] Nothing prevents a taxpayer from challenging an assessment as erroneous or illegal under section 39–1–113 and 39–10–114 before the time the tax is collected. Section 39–1–113, however, requires the board of county commissioners to hold a hearing before refunding taxes "erroneously or illegally levied." A recommendation of the board of county commissioners must be submitted to the tax administrator. § 39–1–113. The tax administrator then approves or disapproves of the board's recommendation. § 39–2–116. If the tax administrator disapproves the recommendation of the board of county commissioners or denies the taxpayer's application for abatement and refund, then the taxpayer or board of county commissioners may appeal under section 39–2–117(5) to the Colorado State Board of Assessment Appeals for review under section 39–2–125(1)(b). A taxpayer who ultimately prevails may recover penalty interest from the date the payment was actually received at the annual rate of twelve percent under section 39–10–114(1)(b).

### B.

The interplay between the protest and adjustment procedures of section 39–5–122 and the abatement and refund procedures of sections 39–1–113 and 39–10–114 has been discussed in *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo. 1987). In *Benbrook* we addressed the narrow issue of whether taxpayers were precluded from appealing a partially illegal tax assessment under the abatement and refund provisions of sections 39–1–113 and 39–10–114 when another similarly situated taxpayer had followed the protest and adjustment procedure of section 39–5–122 to final judgment. In *Benbrook*, a Colorado Springs apartment building was converted to condominiums in 1979. Although no improvements were made to the condominiums, the county assessor interpreted the conversion of the apartment as a "change of use of the land" and assessed the properties so as to double the 1980 property tax for each unit. Several of the condominium owners protested the assessment to the assessor under section 39–5–122. After the assessor denied their protest, two of the owners appealed to the county board of equalization. The county board of equalization denied their appeal. Melvyn Brooks, one of the remaining condominium owners, appealed to the Colorado State Board of Assessment Appeals, which reversed the decision of the county board of equalization on the ground that the condominium conversion was not a "change of use of the land." The decision of the Colorado State Board of Assessment Appeals was affirmed by the district court and became a final judgment when the county did not appeal.

---

**6.** The six year limitation on refunds was added in both § 39–1–113 and § 39–10–114(1)(a) in 1981, effective January 1, 1982. Ch. 446, secs. 1, 2, §§ 39–1–113, 39–10–114(1)(a), 1981 Colo.Sess. Laws 1837, 1838.

In reliance on the *Brooks* decision by the district court, owners of forty-one condominiums in Brooks' complex petitioned their board of county commissioners for a partial refund pursuant to the abatement and refund procedures of sections 39–1–113 and 39–10–114 on the ground that the tax increase was erroneous or illegal. Although the county commissioners recommended that the owners receive a partial refund, the state tax administrator denied their refund petition for failure to exhaust administrative remedies under section 39–5–122. After their appeal to the Colorado State Board of Assessment Appeals was denied, the owners appealed to the district court, which reversed the decision of the Colorado State Board of Assessment Appeals and held that the owners were not required to exhaust their administrative remedies under section 39–5–122 because the tax increase was "wholly illegal and entirely erroneous." The court of appeals affirmed the district court on the same ground.

This court affirmed the judgment of the court of appeals in *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo. 1987), but rejected the characterization by the lower courts that the tax increase on the condominiums was "wholly illegal and entirely erroneous." Instead, it took the position that the tax increase was *partially* illegal, and concluded that a tax increase no longer needs to be characterized as *wholly* illegal before taxpayers may obtain abatement and refund under sections 39–1–113 and 39–10–114. *Id.* at 869. This court examined *Northcutt v. Burton*, 127 Colo. 145, 254 P.2d 1013 (1953), *Weidenhaft v. Board of County Commissioners*, 131 Colo. 432, 283 P.2d 164 (1955), and *Simmons v. Board of County Commissioners*, 146 Colo. 392, 361 P.2d 769 (1961), three cases holding that a taxpayer may not seek relief under sections 39–1–113 and 39–10–114 unless the entire property assessment was "wholly illegal." It recognized that the "wholly illegal" requirement was abandoned by this court in *Modular Communities, Inc. v. McKnight*, 191 Colo. 101, 550 P.2d 866 (1976), and *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977), and concluded that *Northcutt, Weidenhaft*, and *Simmons* were inconsistent with *Modular Communities* and *Lamm v. Barber*. This court overruled *Northcutt, Weidenhaft*, and *Simmons*, and thereby removed the judicially-created requirement that a taxpayer must characterize the entire tax as wholly illegal before seeking abatement and refund under sections 39–1–113 and 39–10–114. *Benbrook*, 735 P.2d at 868.

## C.

The Taxpayers rely on *Benbrook* in arguing that a taxpayer who prevails under section 39–5–122 may recover interest under section 39–10–114(1)(b). They rely on the following language in *Benbrook:* "These sections [sections 39–1–113 and 39–10–114(1)(a)] apply to the refund of taxes paid under section 39–8–109 after a taxpayer who sought administrative relief under section 39–5–122 prevailed before the board of assessment or the district court." *Benbrook*, 735 P.2d at 865. Because the Taxpayers in this case prevailed after seeking administrative relief under section 39–5–122, they argue, they are entitled under *Benbrook* to recover twelve percent interest under section 39–10–114(1)(b). We disagree.

The procedures for protest and adjustment, like the procedures for abatement and refund, were created in 1902. *See* § 94 (protest and adjustment), § 202 (abatement and refund), 1902 Colo.Sess.Laws 92, 146; *Benbrook*, 735 P.2d at 863. From their inception, these separate procedures provide distinct remedies. Prevailing taxpayers who protested an assessment under what is now section 39–5–122 were entitled to recover the amount of overpayment as well as interest from the time of payment at the annual rate of ten percent, while prevailing taxpayers who sought abatement and refund under what are now sections 39–1–113 and 39–10–114 were entitled to recover "only the amount found to be illegal, *without interest."* *Goldsmith v. Standard Chemical Co.*, 23 F.2d 313, 316 (8th Cir.1927) (emphasis added) (construing predecessor to sections 39–5–122 and 39–1–113), *cert. denied*, 277 U.S. 599, 48 S.Ct. 560, 72 L.Ed. 1008 (1928); *Antero & Lost Park Reservoir Co. v. Board of County*

*Comm'rs,* 75 Colo. 131, 135, 225 P. 269, 271 (1924) (prevailing taxpayer who sought abatement and refund under what are now sections 39–1–113 and 39–10–114 may recover overpayment of "illegal and void" tax but not interest on the overpayment).[7] In *Miller v. Board of County Commissioners,* 92 Colo. 425, 21 P.2d 714 (1933), this court held that taxpayers could not prevail under the abatement and refund procedures when the tax was not "erroneous or illegal" but merely excessive. This court accepted the district court's reasoning that, because the 1902 General Assembly created distinct procedures for appealing tax assessment errors, "it could not have been the intent of the Legislature to provide two methods of procedure for the same wrong, growing out of the same facts." *Id.* at 431, 21 P.2d at 715.

The legislature's perpetuation of procedures and remedies for protest and adjustment separate and distinct from procedures and remedies for abatement and refund indicates that a taxpayer who seeks redress under one procedure cannot claim the remedy of the other procedure if the taxpayer ultimately prevails. Just as the *Antero* and *Goldsmith* taxpayers who prevailed under the abatement and refund procedure were not entitled to recover interest under the protest and adjustment statute, we conclude that taxpayers who prevail under the protest and adjustment procedure are not entitled to recover interest under the abatement and refund statute of section 39–10–114(1)(b).[8]

Moreover, the Taxpayers did not challenge the refusal to permit depreciation beyond the base year as an illegal or erroneous tax. In their appeal to the Colorado State Board of Assessment Appeals, the Taxpayers stipulated that the sole issue was "whether in determining the Subject Property's current replacement cost, new, less depreciation includes actual loss in value from all causes as of the January 1, 1980 assessment date or excludes all actual loss in value subsequent to January 1, 1973." In their appeal to the district court following the decision of the Colorado State Board of Equalization, the Taxpayers merely alleged that they "objected to the assessed valuation" of personal property; their greater concern was whether the Colorado State Board of Equalization was without jurisdiction to reverse the decision of the Colorado State Board of Assessment

---

**7.** The 1902 General Assembly permitted taxpayers who prevailed under the protest and adjustment procedure to recover interest at ten percent per annum from the date of overpayment. *See* sec. 94, 1902 Colo.Sess.Laws 92. The rate of interest a taxpayer could recover under the protest and adjustment procedure was lowered to eight percent in 1943, Ch. 157, sec. 13, Ch. 142 § 110, 1943 Colo.Sess.Laws 491, 496–98 (effective July 1, 1944), and was lowered to six percent in 1970, *see* ch. 90, sec. 24, § 39–8–109, 1970 Colo.Sess.Laws 371, 386 (effective July 1, 1971). By contrast, the General Assembly did not permit a taxpayer who prevailed under the abatement and refund procedure to recover interest until 1981, when it permitted such taxpayers to recover interest at the annual rate of twelve percent. *See* ch. 446, sec. 2, § 39–10–114, 1981 Colo.Sess.Laws 1837, 1837 (effective January 1, 1982).

**8.** We recognize that the language in *Benbrook* cited by the Taxpayers had led to the misinterpretation that a taxpayer who prevails after appealing under the protest and adjustment procedure of § 39–5–122 has the option of electing to recover the protest and adjustment remedy contained in § 39–8–109 or the abatement and refund remedy contained in § 39–10–114(1)(b).

In effect, such an interpretation would fuse the two procedures into one procedure with two remedies. Our holding today rejects such an interpretation. We reaffirm that the protest and adjustment procedure is distinct from the abatement and refund procedure and conclude that a taxpayer who begins a protest under § 39–5–122 and eventually prevails is not free to elect to recover under § 39–10–114 but may recover under § 39–8–109.

Our holding today does not affect our statement in *Benbrook* that a taxpayer may seek relief for violations of § 39–5–122(2) under § 39–1–113 and § 39–10–114 without exhausting the administrative remedies described in § 39–5–122 when the taxpayer does not learn of an assessment increase until the time to protest under § 39–5–122 has passed because of a clerical error on the part of the county in the notice of assessed valuation of the property, *see Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 102, 550 P.2d 866, 867 (1976), or when the taxpayer is denied an opportunity to protest an assessment increase under § 39–5–122 because the tax was increased by the Colorado State Board of Equalization after the time for protesting the assessor's original assessment had passed, *see Lamm v. Barber,* 192 Colo. 511, 523–24, 565 P.2d 538, 547 (1977).

Appeals.[9] In short, the Taxpayers initiated and concluded this appeal as an overassessment protest under section 39–5–122. They prevailed in *BQP Industries* and are entitled to recover under section 39–8–109. The Denver District Court properly determined that the Taxpayers were entitled to recover interest at the annual rate of six percent.[10]

The judgment of the court of appeals is affirmed.

---

9. The record does not reveal whether the Taxpayers made different allegations to the county assessors, to the boards of county commissioners, or to the court of appeals in *BQP Industries.*

10. The City and County of Denver argued that it was not properly joined on appeal by Gates Rubber Company, Honeywell Information Systems, Inc., and Samsonite Corporation because the taxpayers in question did not timely name the City and County of Denver as a party in their notice of appeal to the court of appeals and notice of intent to appeal to the district court. We need not decide this issue because we conclude that the district court properly awarded interest on the overpayment of tax at the annual rate of six percent.