**COQUINA OIL CORPORATION, a Nevada corporation, Petitioner,**

**v.**

**The LARIMER COUNTY BOARD OF EQUALIZATION; the Board of County Commissioners of the County of Larimer, State of Colorado; Courtlyn W. Hotchkiss, Nona Thayer and James P. Lloyd, in their official capacity as members of the Larimer County Board of Equalization and the Board of County Commissioners of the County of Larimer, State of Colorado; the Board of Assessment Appeals of the State of Colorado; Henry F. Shriver, and F. William Beier, in their official capacity as members of the Board of Assessment Appeals; and Richard W. Green, Larimer County Assessor, Respondents.**

No. 87SC162.

Supreme Court of Colorado, En Banc.

March 13, 1989.

Rehearing Denied April 10, 1989.

Downey & Murray, P.C., Thomas E. Downey, Jr., Kate E. Knickrehm, Englewood, for petitioner.

Harden, Schmidt, Hass & Zier, P.C., George H. Hass, Fort Collins, for County respondents.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for State respondents.

Sayre, Ankele & Icenogle, T. Edward Icenogle, Daniel B. Slattery, Englewood, amicus curiae for Amoco Production Co.

VOLLACK, Justice.

In *Coquina Oil Corp. v. Larimer County Board of Equalization*, 742 P.2d 932 (Colo.App.1987), the court of appeals held that a taxpayer who had supplied erroneous information to the county assessor which resulted in a tax overassessment of $66,423.10 could not seek abatement and refund of the overpayment under sections 39–1–113 and 39–10–114, 16B C.R.S. (1982). While we disagree with much of the reasoning of the court of appeals, we affirm its conclusion.

I.

The parties stipulated to the following facts. Coquina Oil Corporation (Coquina) is a Nevada corporation that owns oil and gas leases in Larimer County. Coquina in April 1982 filed its 1981 revenue figures for four oil leases with the county assessor as required by law for property assessment purposes. The assessor relied on these revenue figures in assessing the property and mailed Coquina a notice of assessed valuation in June 1982. Coquina paid the tax in February 1983.

In April 1983, after the protest period under section 39–5–122, 16B C.R.S. (1982), had passed, Coquina discovered that its accountants had misstated the amount of revenue generated by the oil leases in 1981, which resulted in a $66,423.10 overpayment of 1982 property taxes. Coquina immediately notified the county assessor of the error. It submitted correct revenue fig-

ures to the county assessor in August 1983 and requested a refund from the board of county commissioners (county board) pursuant to the abatement and refund provisions of sections 39–1–113 and 39–10–114.

The assessor recommended that the county board deny Coquina's request for a refund because the error was made by Coquina and because Coquina failed to protest the assessment during the protest and adjustment period specified in section 39–5–122. The county board denied Coquina's request in September 1983 for these reasons.

Coquina then appealed to the Colorado State Board of Assessment Appeals (Board). The Board affirmed the county board in March 1984 because it concluded Coquina failed to protest the assessment timely under section 39–5–122.

Coquina then sought judicial review of the Board's decision in the Larimer County District Court. The district court reversed the decision of the Board in April 1985. Rather than analyzing the applicability of sections 39–1–113 and 39–10–114, however, the district court found simply that it would be a denial of due process for the government to be able to recover an underpayment of property tax when the taxpayer erred in his favor without permitting the taxpayer to recover an overpayment when the taxpayer erred to its detriment. The district court ordered the county to refund $66,423.10 with interest.

The taxing authority appealed to the court of appeals. The court of appeals reversed the judgment of the district court in *Coquina Oil Corp. v. Larimer County Board of Equalization*, 742 P.2d 932 (Colo. App.1987). The court of appeals stated that a taxpayer could not seek abatement and refund under sections 39–1–113 and 39–10–114 unless the taxpayer shows that (1) the assessment is "wholly illegal or entirely erroneous and incapable of adjustment" or (2) the taxpayer "first becomes aware of the excessive charges after the statutory deadlines set forth in § 39–5–122 have expired." *Id.* at 933 (quoting *Alpenrose Unit Week Ass'n v. Board of Assess-*

*ment Appeals,* 713 P.2d 932, 933 (Colo. App.1985)). It held that Coquina had not shown the assessment to be "illegal or erroneous in its entirety" as required in *Simmons v. Board of County Commissioners,* 146 Colo. 392, 361 P.2d 769 (1961), and *Schmidt–Tiago Construction Co. v. Property Tax Administrator,* 687 P.2d 528 (Colo.App.1984). The court of appeals found "unpersuasive" the argument that Coquina "first became aware of the excessive charges" after the time for protest and adjustment under section 39–5–122 had passed because the information necessary to show the tax was excessive was in Coquina's files since the spring of 1982. The court of appeals relied on *E.A. Stephens & Co. v. Board of Equalization,* 104 Colo. 556, 92 P.2d 732 (1939), in concluding that a taxpayer who provides erroneous information to the taxing authority cannot seek relief after the time for protest and adjustment has passed.

Two months after the court of appeals reversed the judgment of the district court, this court decided *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo. 1987). *Benbrook* overruled *Simmons* and two other cases holding that a taxpayer may not seek relief under the abatement and refund procedure of sections 39–1–113 and 39–10–114 unless the tax is *wholly* illegal or erroneous.[1] *Benbrook* held that a taxpayer may seek relief under sections 39–1–113 and 39–10–114 for a tax that is only *partially* illegal. *See generally Gates Rubber Co. v. State Bd. of Equalization,* 770 P.2d 1189, 1193–1194, (Colo. 1989).

We granted certiorari to review *Coquina Oil* in light of *Benbrook* and to decide whether a taxpayer may obtain a refund under sections 39–1–113 and 39–10–114 after the time for protesting under section

39–5–122 has passed when the increased assessment was due to taxpayer error.

## II.

### A.

■ We begin by noting that *Benbrook* does not decide whether a taxpayer may recover an overpayment of taxes under sections 39–1–113 and 39–10–114(1)(a) when the taxpayer failed to protest under section 39–5–122 because of its own error which it failed to discover during the protest period described in section 39–5–122. *Benbrook* holds that a taxpayer may seek abatement and refund of overpaid taxes under sections 39–1–113 and 39–10–114 without exhausting administrative remedies under section 39–5–122 when another similarly situated taxpayer follows the protest procedure of section 39–5–122 and obtains a final determination that a property tax assessment is partially illegal. *See Benbrook,* 735 P.2d at 868; *see also Gates,* at 1194. As we recently observed, relief from violations of section 39–5–122 may also be obtained under sections 39–1–113 and 39–10–114

when the taxpayer does not learn of an assessment increase until the time to protest under § 39–5–122 has passed because of a clerical error on the part of the county in the notice of assessed valuation of the property, *see Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 102, 550 P.2d 866, 867 (1976), or when the taxpayer is denied an opportunity to protest an assessment increase under § 39–5–122 because the tax was increased by the Colorado State Board of Equalization after the time for protesting the assessor's original assessment had passed, *see Lamm v. Barber,* 192 Colo. 511, 523–24, 565 P.2d 538, 547 (1977).

---

1. The other cases *Benbrook* expressly overruled were *Northcutt v. Burton,* 127 Colo. 145, 152, 254 P.2d 1013, 1017 (1953), and *Weidenhaft v. Board of County Com'rs,* 131 Colo. 432, 438, 283 P.2d 164, 167–68 (1955). *Benbrook* noted that this court's decisions in *Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976), and *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977), also called into question many

cases later decided by the court of appeals that revived the "wholly illegal or entirely erroneous" language contained in *Northcutt* and its progeny. Two of the cases called into question for reviving the "wholly illegal or entirely erroneous" language were *Schmidt–Tiago,* which the court of appeals relied on in this case, and *Coquina Oil. See Benbrook,* 735 P.2d at 868.

*Gates,* at 1195 n. 8; *see also Benbrook,* 735 P.2d at 865.

The circumstances that *Benbrook* found would justify relief under sections 39–1–113 and 39–10–114 rather than section 39–5–122 are not present in this case. No similarly situated taxpayer followed the protest procedure of section 39–5–122 and obtained a final determination that the tax Coquina paid was partially illegal, as in *Benbrook* Coquina was not given an erroneous notice of valuation upon which it relied, as in *Modular Communities.* The tax was not a subsequent assessment, as in *Lamm v. Barber.* In short, *Benbrook* does not dispose of the issues in this case.

Although the issues in this case must be resolved by resort to cases other than *Benbrook,* our decision in *Benbrook* clearly rejects the notion that Coquina's claims under sections 39–1–113 and 39–10–114 must be denied because the tax was not "wholly illegal or entirely erroneous." To the extent that the court of appeals relied on that rationale, it was in error.

### B.

■ The taxing authority argues that a taxpayer who supplies erroneous information which forms the basis of the overvaluation may not seek abatement and refund under sections 39–1–113 and 39–10–114. The taxing authority relies on *E.A. Stephens & Co. v. Board of Equalization,* 104 Colo. 556, 92 P.2d 732 (1939), for the proposition that a taxpayer may not obtain relief under the abatement and refund procedure for errors of its own making. It points out that section 39–5–122 was available to taxpayers such as Coquina to correct errors of this type but must be exercised timely so as not to impede the revenue collection and budgetary process. Coquina argues that it may seek abatement and refund under section 39–10–114(1)(a), which permits a taxpayer to demand correction of a "clerical error." Coquina argues that *Stephens* was implicitly overruled by *Board of Commissioners v. Doherty,* 114 Colo. 594, 168 P.2d 556 (1946). Coquina argues that the facts of this case are similar to the facts in *Modular Communities,* and argues that

the purpose of section 39–10–114 of correcting "any substantial injustice resulting in 'erroneous valuation for assessment' of a taxpayer's property" would be thwarted if Coquina were denied relief. *See Lamm v. Barber,* 192 Colo. at 526, 565 P.2d at 539. We conclude that phrase "clerical error" in section 39–10–114(1)(a) does not encompass an error made by the taxpayer and relied upon by the tax authority.

Section 39–10–114(1)(a) requires abatement of taxes that have been "levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, or *clerical error.*" (Emphasis added.) Although the phrase "clerical error" is not defined in section 39–10–114(1)(a), the phrase was interpreted by this court in *Bessemer Irrigating Co. v. West Pueblo Ditch & Reservoir Co.,* 65 Colo. 258, 176 P. 302 (1918). In *Bessemer,* this court permitted a party to amend a water court decree that erroneously attributed a priority that arose in 1887 as having arisen in 1877 due to a transcription mistake by the water referee. This court stated:

A mere clerical error arising from inadvertence or the formal misprison [sic] of clerks or other officers may always be corrected by the court, so as to make the judgment speak the truth, even after the term. *The term "clerical error" as here used* must not be taken in too narrow a sense. It *includes not only errors made by the clerk* in entering the judgment, *but also those mistakes* apparent on the face of the record, whether *made by the court or counsel during the progress of the case,* which cannot reasonably be attributed to the exercise of judicial consideration or discretion.

. . . .

Hence, although a court is without power generally to alter or amend final judgments after the close of the term at which they were rendered, it may after the expiration of the term of court make amendments of the record of judgments so as to correct errors, mistakes or misprisons [sic] of clerks, or other officers of the court, inadvertencies of counsel, or to supply defects or omissions in the record.

*Id.* at 259–60, 176 P. at 303 (citing 23 Cyc. 864; 15 R.C.L. 679) (emphasis added); *see also Meyring Livestock Co. v. Wamsley Cattle Co.*, 687 P.2d 955, 958 (Colo.1984); *Telluride Co. v. Division Eng'r*, 195 Colo. 143, 144, 575 P.2d 1297, 1298 (1978); *West Pueblo Ditch & Reservoir Co. v. Bessemer Irrigating Co.*, 72 Colo. 224, 225, 210 P. 601, 601 (1922). Although interpreted in a context different than the one in this case, the term "clerical error" was found to apply to clerks and other officers of the court.

In *E.A. Stephens & Co. v. Board of Equalization*, 104 Colo. 556, 92 P.2d 732 (1939), this court construed the phrase "clerical or other errors or irregularities" in chapter 142, § 281, 4A C.R.S. (1935), the predecessor to section 39–10–114.[2] E.A. Stephens and Company (Stephens) sought abatement and refund of $936.24 of personal property tax. In 1932 and 1933, Stephens' accountant had erroneously over-valued Stephens' inventory by almost $28,-000. Stephens provided the erroneous figures to the taxing authority, which the taxing authority used to calculate Stephens' personal property tax for 1932 and 1933. Stephens discovered the error after the protest period under the predecessor to section 39–5–122 had passed. It argued that the overpayment was a "clerical or other error or irregularity" that permitted a refund of taxes under what is now section 39–10–114.

This court denied Stephens' claim for a refund. It noted that the erroneous valuation was placed in the tax schedule by Stephens and that "[n]o person employed by the taxing agency had any part whatsoever in fixing this valuation." *Id.* at 560–61, 92 P.2d at 734. This court found that Stephens had a duty to file a correct schedule and to know what elements of value and property were listed in that schedule prepared by it. It concluded from policy considerations that permitting recovery under these circumstances "would endanger the entire tax structure of the state and

lead to a multiplicity of suits for refund of taxes." *Id.* at 561, 92 P.2d at 734.

In *Board of Commissioners v. Doherty*, 114 Colo. 594, 168 P.2d 556 (1946), this court again interpreted the phrase "clerical or other errors or irregularities" in chapter 142, § 281, 4A C.R.S. (1935). The executor of the estate of the owner of a partnership sought a refund of thirteen years of real property taxes. The partnership in 1918 had acquired by quitclaim deed what it believed to be an easement on state-owned land in Morgan County. The easement was subject to reversion to the state upon abandonment. Prior to 1918 and without knowledge of the partnership, however, the previous owners had abandoned the easement. As a result, the easement reverted to the state and the partnership acquired no interest in the state-owned land. The county assessor, however, failed to recognize that the partnership had no interest in the property, and in 1925 erroneously scheduled the land as owned by the partnership. An agent of the partnership reviewed and approved the schedule without discovering that the assessor had scheduled the land as owned by the partnership. The partnership paid tax on the property from 1925 to 1937, when the owner of the partnership died. The executor sought a refund on the ground that the assessor and taxpayer had been operating under a mutual mistake of fact.

This court granted the executor's claim for a refund. It stated that, although neither the owner of the partnership nor the county assessor was negligent, both parties were mutually mistaken. It distinguished "between claims made because of erroneous assessments, for example, on property *not* taxable, and those made because of excessive valuations on property that *is* taxable." *Id.* at 600, 168 P.2d at 559 (emphasis in original). It concluded that assessments on untaxable property fell into the category of claims that taxpayers could raise under what is now section 39–10–114(1)(a), while claims such as the one in

---

**2.** Chapter 142, § 281, 4A C.R.S. (1935), provides: [I]n all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erro-

neous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer.

*Stephens* fell into the category of claims that taxpayers could raise only under what is now section 39–5–122. In granting a refund, this court gave special attention to *Stephens*. The court concluded that "[i]n no conceivable sense, as we are convinced, is the Stephens case comparable to the present inquiry." *Id.* at 602, 168 P.2d at 560.

■ Two justices in dissent argued that the *Doherty* majority had implicitly overruled *Stephens* by permitting a taxpayer to recover a refund despite contributing to the error. *Id.* at 610, 168 P.2d at 564 (Stone, J., dissenting).[3] *Doherty*, however, is better understood as permitting a taxpayer to recover a refund under what is now section 39–10–114(1)(a) for assessment errors due at least in part to the taxing authority. Viewed in this light, *Doherty* and *Stephens* create a bright line rule. A taxpayer can recover a refund under the clerical error provision of section 39–10–114(1)(a) after the time to protest under section 39–5–122 has passed when the error is due at least in part to the taxing authority, but cannot recover when the error is due solely to the taxpayer. Taxpayers who create the overvaluation by supplying erroneous information to the taxing authority must discover the mistake and protest within the time prescribed in section 39–5–122.

This interpretation has not been changed by our subsequent decisions. In *Modular Communities*, we permitted a taxpayer to seek a refund under what is now section 39–10–114(1)(a) for what was admittedly an overvaluation of property tax. We excused the taxpayer from protesting within the time described in section 39–5–122 because the taxing authority had sent the taxpayer an erroneous notice of assessed valuation, so that the protest period under section 39–5–122 passed before the taxpayer learned that the county had significantly increased the valuation of the property.

Because the error was due entirely to the taxing authority, we granted the taxpayer relief under section 39–10–114. 191 Colo. at 103, 550 P.2d at 867; *see also Gates*, at 1195 n. 8. In *Lamm v. Barber*, we stated that taxpayers were not denied due process of law when county assessors were compelled to raise assessments of property throughout the county after the protest period had passed, because the taxpayers in that special circumstance could seek a refund under what is now section 39–10–114(1)(a). We stated: "[Section 39–10–114] in plain terms clearly provides administrative remedies for correction of any substantial injustice resulting from 'erroneous valuation for assessment' of any taxpayer's property." 192 Colo. at 526, 565 P.2d at 549. We perceive no substantial injustice, however, in requiring a taxpayer to check its records upon receiving a notice of valuation for errors in valuation based on information it supplied to the taxing authority.

In addition, we note that the General Assembly in 1964 repealed and reenacted the abatement and refund statute, changing the phrase "clerical or other errors or irregularities" to "clerical errors." Ch. 94, art. 10, § 137–10–14, 1964 Colo.Sess.Laws 674, 722. This narrowed the category of errors that could qualify for relief under the abatement and refund statute. In no sense did the General Assembly by legislation change the rule created by *Stephens* and *Doherty* that a taxpayer cannot recover a refund after the protest period has passed when the error was due to information the taxpayer supplied to the taxing authority.

The decision of the court of appeals is correct insofar as it relies upon the rationale of *Stephens*. On that basis, the decision of the court of appeals is affirmed.

ERICKSON, J., dissents; LOHR and KIRSHBAUM, JJ., join in this dissent.

---

**3.** Although Justice Stone improperly characterized the *Doherty* majority opinion as having implicitly overruled *Stephens*, he properly noted that

> Payment under a mistake of fact is generally held to be recoverable, at least where a mistake on the part of the tax officers, but not *where the mistake is that of the taxpayer and due to his own neglect.* Mistake or ignorance

of fact is not ground where the public records show the facts, since public policy requires that taxpayers be presumed to know facts appearing of record.

*Doherty*, 114 Colo. at 607, 168 P.2d at 563 (Stone, J., dissenting) (citing 3 T. Cooley, *Taxation* § 1295, at 2582 (4th ed. 1924)) (emphasis in original).

ERICKSON, Justice, dissenting:

I respectfully dissent. Coquina Oil Corporation (Coquina) reported its 1982 production revenue and not its 1981 from four oil leases to the Larimer County Assessor (assessor) pursuant to section 39-7-101, 16B C.R.S. (1982). Based on the report the assessor placed a value on the leases and sent a notice of assessed valuation to Coquina. Coquina paid the assessed tax and did not discover that an error had been made in the report to the assessor until after the time limitations for protest and adjustment set forth in section 39-5-122, 16B C.R.S. (1982), expired. As a result of a clerical error, Coquina supplied erroneous production figures to the assessor which resulted in an overpayment of $66,423.10. When Coquina discovered that it had erroneously reported its 1982 production revenue and not its 1981 production revenue, it filed a petition for abatement and refund under the provisions of section 39-10-114, 16B C.R.S. (1982).

The majority opinion accurately traces Coquina's efforts to recover the overpayment and the subsequent denial of relief by the court of appeals. *Coquina Oil Corp. v. Larimer County Bd. of Equalization*, 742 P.2d 932 (Colo.App.1987). The majority, however, attributes little to *Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo.1987), in denying relief to the taxpayer. *Benbrook* was decided two months after the court of appeals announced *Coquina*.

In my view, the remedial measures provided by the General Assembly to correct errors that occur in the determination of the proper tax are to protect not only the taxing authority but also the taxpayer. The majority holds that a taxpayer can only recover a refund under the clerical error provision of section 39-10-114(1)(a) when the error is due in part to the taxing authority, but cannot recover when the error is due solely to a clerical error by the taxpayer. At 1201. In my opinion, under the facts of this case, the taxpayer is entitled to a refund of overpaid taxes even though the error was attributable solely to the taxpayer.

It is undisputed that Coquina erroneously over paid a substantial amount by reason of a good faith mistake. As a result of the error the government reaped a windfall profit which violates the Colorado Constitution's mandate that taxes shall be assessed in a fair and equitable manner. *See* Colo. Const. art. X, § 3.

The erroneous valuation was not discovered in time for correction pursuant to the protest and adjustments provisions of section 39-5-122, 16B C.R.S. (1982). The General Assembly, however, enacted two provisions that grant a remedy to the taxpayer to recover an amount erroneously paid after the time periods in section 39-5-122, have expired. *See* sections 39-1-113 and 39-10-114, 16B C.R.S. (1982).

Section 39-10-114 states in pertinent part:

(1)(a) *If taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, or clerical error,* the treasurer shall report the amount thereof to the board of county commissioners, who shall proceed to abate such taxes in the manner provided by law. *However, in no case shall an abatement or refund in taxes be made more than six years after the taxes were due.*

(b) Any taxes illegally or erroneously levied and collected, and penalty interest thereon, shall be refunded pursuant to this section, together with refund interest at the same rate as that provided for penalty interest set forth in section 39-10-114. Said refund interest shall accrue only from the date payment of taxes and penalty interest thereon was received by the treasurer.

(Emphasis added.)

When the language of the statute is plain and its meaning clear, it must be applied as written. *See Department of Social Serv. v. Board of County Com'rs*, 697 P.2d 1 (Colo.1985); *People in Interest of Paiz*, 43 Colo.App. 352, 603 P.2d 976 (1979). Moreover, in construing a taxation statute, all doubts must be construed against the taxing authority and in favor of the taxpayer. *Associated Dry Goods v. Arvada*, 197 Colo. 491, 593 P.2d 1375 (1979); *Rocky*

*Mountain Prestress, Inc. v. Johnson,* 194 Colo. 560, 574 P.2d 88 (1978); *City & County of Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958). The plain language of section 39–10–114 clearly and unambiguously provides a refund remedy to taxpayers who have over paid taxes due to a clerical error. The majority opinion's limitation of relief for a clerical error to those committed at least in part by the taxing authority ignores the plain wording of the statute and unfairly deprives Coquina of the taxpayer remedies provided by the General Assembly. A clerical error should be corrected if the error causes an illegal or erroneous result in the assessment and collection of the tax that the General Assembly has specified. The statute should not be read to defeat the purpose of providing taxpayers relief from erroneous tax assessments. *See People v. District Court,* 713 P.2d 918 (Colo.1986); *Tacorante v. People,* 624 P.2d 1324 (Colo.1981).

The six-year statute of limitations contained in sections 39–1–113 and 39–10–114 was enacted in 1981 and became effective January 1, 1982. Ch. 446, sec. 2, § 39–10–114, 1981 Colo.Sess.Laws 1837, 1838. The addition of the six-year statute of limitations in section 39–10–114 reflects the General Assembly's intent to provide a basis for taxpayer relief beyond the time permitted for protest and adjustment under section 39–5–122. *See Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo.1987). In *Benbrook,* we provided for a liberal construction of section 39–10–114, stating "in plain terms [section 39–10–114] provides administrative remedies for correction of any substantial injustice resulting from 'erroneous valuation for assessment' of a taxpayer's property." *Id.* at 868 (quoting *Lamm v. Barber,* 192 Colo. 511, 526, 565 P.2d 538, 549 (1977)). In my view, section 39–10–114 also furnishes a remedy for correction of substantial injustice resulting from "clerical errors." Both *Lamm* and *Benbrook* demonstrate that section 39–10–114 is to be applied liberally to correct good-faith errors if those errors are discovered after the procedural time limits in 39–5–122 have expired.

The amendment by the General Assembly of sections 39–1–113 and 39–10–114 to include a six-year limitative period implicitly overrules *E.A. Stephens & Co. v. Board of Equalization,* 104 Colo. 556, 92 P.2d 732 (1939). The six-year statute of limitations reflects that the General Assembly was not concerned that the remedy of abatement and refund would encourage litigation, impede revenue collection, and damage the budgetary process. In allowing a taxpayer a full six years to appeal an erroneous tax, the legislature refuted the holding in *Stephens* that belated recovery would "endanger the entire tax structure of the state and lead to a multiplicity of suits for the refund of taxes." *Stephens,* 104 Colo. at 561, 92 P.2d at 734. In *Board of Commissioners v. Doherty,* 114 Colo. 594, 168 P.2d 556 (1946), we implicitly overruled *Stephens* stating:

> The section of the county's reliance, provides that, every "inhabitant ... shall set down ... all real estate situate within the county by him owned or controlled on the first day of April, of the then current year, describing," etc. Certainly, that statute is reasonable, and should be observed. *But it is a far cry, we think, and most unjust, to say that because a taxpayer's agent, proceeding in the manner and under the circumstances here, mistakenly schedules real estate that not only does not belong to his principal, but is nonassessable state lands in which he has no interest, and, while continuing in error, pays the taxes levied thereon, does not come within the "new right" which the statute invoked by the taxpayer clearly declares.* "Submission of property not taxable confers no authority on the taxing officers to assess or levy a tax thereon, and being without authority so to do, the taxpayer cannot be estopped by such listing from asserting such want of authority or the illegality of taxes levied and collected thereon."

*Id.* at 600, 168 P.2d at 560 (citations omitted) (emphasis added).

Although *Doherty* is factually distinguishable from this case, the same rationale applies. Section 39–10–114 should not be construed to prevent a taxpayer from obtaining a refund of taxes paid as a result of a good faith mistake. Here, Coquina

was able to justify its error as a good faith mistake made by accountants. Coquina's substitution of the 1981 production revenue figures for 1982 figures is "clerical error" within the meaning of section 39–10–114. I would therefore hold that Coquina is entitled to a full refund of the erroneously paid taxes.

Coquina should also be permitted to recover interest in the amount of one percent per month in accordance with section 39–10–104(3)(a), 16B C.R.S. (1982). Accordingly, I would return the case to the court of appeals with directions to remand to the district court of Larimer County to order the assessor to refund to Coquina $66,-423.10 plus 12% annual interest.

I am authorized to say that Justice LOHR and Justice KIRSHBAUM join in this dissent.